THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSEPH SALTIS, Plaintiff in Error.

*Opinion filed April 20, 1927—Rehearing denied February 20, 1928.*

1. CONSTITUTIONAL LAW—*what is meant by equal protection of the law.* Equal protection of the law requires that the rights of every person under similar circumstances must be governed by the same rule of law, and a classification for the purpose of legislation must be so general as to bring within the operation of the law all persons in substantially the same situation.

2. SAME—*legislature may make classification for suppression of evil.* It is the function of the legislature to discern and correct evils and it may consider degrees of evil and what means shall be adopted for its suppression, and a statute designed to suppress an existing evil may make a classification, and it will not be interfered with by the courts unless it is palpably arbitrary and unreasonble or clearly in violation of some constitutional limitation.

3. SAME—*the party raising a constitutional question must show classification unreasonable.* A distinction in legislation is not arbitrary if any state of facts reasonably can be conceived that will sustain it, and, as the existence of that state of facts at the time the law was enacted must be assumed, the burden is upon the party assailing the classification made by the statute to show that it does not rest upon any reasonable basis but is essentially arbitrary.

4. SAME—*act of 1925, prohibiting carrying of concealed weapons, does not make an arbitrary classification.* The act of 1925, prohibiting the carrying of concealed weapons, does not make an unreasonable or arbitrary classification in excepting from its provisions certain employees of railroad and express companies and not excepting other agents or persons who at certain times and places require self-protection, as the classification has a reasonable basis, and the law is not invalid merely because it does not cover all possible cases.

5. CRIMINAL LAW—*exceptions in act of 1925 to prohibit carrying concealed weapons need not be negatived in indictment.* The exceptions in the act of 1925 to prohibit the carrying of concealed weapons need not be negatived in an indictment or information, as the exceptions are not incorporated in the definition or description of the offense but merely withdraw certain persons from the operation of the statute and constitute matter of defense.

6. SAME—*when a defendant charged with carrying concealed weapon cannot complain of its introduction in evidence because*

*unlawfully seized.* A defendant charged with carrying a concealed weapon in violation of the act of 1925 cannot complain of the introduction of the weapon in evidence on the ground that it was taken from him by unlawful search and seizure, as the testimony of the witnesses that they found the weapon concealed on his person is sufficient to convict and the introduction of the weapon in evidence adds nothing to the value or strength of the testimony.

WRIT OF ERROR to the Municipal Court of Chicago; the Hon. GEORGE A. CURRAN, Judge, presiding.

W. W. O'BRIEN, (JAMES M. BURKE, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and G. E. NELSON, (EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

Joseph Saltis, having waived a jury, was convicted upon a trial by the court in the municipal court of Chicago upon an information charging him with carrying a revolver concealed upon his person and has sued out a writ of error from this court to reverse the judgment, the ground of our jurisdiction being that the constitutionality of section 4 of the act revising the law relating to deadly weapons (Laws of 1925, p. 339,) is involved.

The constitutionality of the section is the first question to be determined. It is as follows: "No person shall carry concealed on or about his person a pistol, revolver or other fire-arm. This provision does not apply, however, to the following officers while engaged in the discharge of their official duties: Sheriffs, coroners, constables, policemen or other duly constituted peace officers, and wardens, superintendents and keepers of prisons, penitentiaries, jails and other institutions for the detention of persons accused or convicted of crime; nor to the following employees or agents while engaged in the discharge of the duties of

their employment: conductors, baggagemen, messengers, drivers, watchmen, special agents and policemen employed by railroads or express companies; nor to persons lawfully summoned by an officer to assist in making arrests or preserving the peace while so engaged in assisting such officer."

It is contended that the section is unconstitutional because of its exclusion from the prohibition of "the following employees or agents while engaged in the discharge of the duties of their employment: conductors, baggagemen, messengers, drivers, watchmen, special agents and policemen employed by railroads or express companies." It is argued that there is no basis in reason for the exemption of these persons from the prohibition of carrying concealed weapons on the person; that there are many persons engaged in occupations of a like character, having like duties and exposed to similar dangers, who are denied the right to carry fire-arms for their protection and the protection of their property and the property which is entrusted to them; that the classification in this section has no reasonable relation to the purpose intended to be served by the act and therefore violates those provisions of the State and Federal constitutions which guarantee due process of law and the equal protection of the laws.

The principle has been stated in varying language in many cases, that every person has a right to be governed by general laws operating equally and uniformly upon all persons in like circumstances who are within the condition for which the law provides, and the classification must be so general as to bring within the operation of the act all persons in substantially the same situation. Equal protection of the law requires that the rights of every person must be governed by the same rule of law under similar circumstances, and a mere arbitrary discrimination between different classes is a denial of the equal protection of the law. Some of the cases in which this principle has been announced are *Ritchie* v. *People,* 155 Ill. 98; *Millett* v. *Peo-*

*ple,* 117 id. 294; *Lippman* v. *People,* 175 id. 101 ; *Ruhstrat* v. *People,* 185 id. 133; *Gillespie* v. *People,* 188' id. 176; *Mathews* v. *People,* 202 id. 389; *Sturges & Burn Manf. Co.* v. *Pastel,* 301 id. 253; *Frazer* v. *Shelton,* 320 id. 253; *Berry* v. *City of Chicago,* id. 536. The plaintiff in error refers to autobuses engaged in the transportation of persons and property on the highways; jewelry or diamond salesmen transporting their wares by automobile; telephone, telegraph and electric light companies transporting valuable material and costly tools for construction work; street car companies, banks, packers, manufacturers and their employees, and others, as persons in similar situation to those named in the act and equally entitled to the protection of concealed weapons.

The object of the legislature in the passage of the act was to protect the public against the occurrence of assaults, affrays and crimes of violence, which are encouraged by the custom of the general and promiscuous carrying of concealed weapons. The section in question therefore defines tersely and clearly, in a single sentence, the act it was intended to prohibit. It was clearly within the legislative power to pass the act. The definition of the offense in section 4 gave the prohibition universal application. The legislature, believing that the purpose of the act did not require its application to peace officers or to persons engaged in certain employments while in the discharge of their duties, enacted by subsequent clauses that the prohibition should not apply to such persons. It is a legislative question whether an evil exists which requires means to be taken for its suppression and what those means shall be, and its acts to that end will not be interfered with unless clearly in violation of some constitutional limitation. The legislature may consider degrees of evil and is not bound to pass such a law as will meet every case. It has a wide discretion in classifying the objects of its legislation, and such classification need not be scientific or logically appro-

328—32

priate. If uniform within the class and not palpably arbitrary it will be sufficient. (*People* v. *Stokes,* 281 Ill. 159; *Stewart* v. *Brady,* 300 id. 425; *Griffith* v. *Connecticut,* 218 U. S. 563; *Mutual Loan Co.* v. *Martell,* 222 id. 225; *Hall* v. *Geiger,* 242 id. 339; *Wessell* v. *Timberlake,* 95 Ohio St. 21.) A distinction in legislation is not arbitrary if any state of facts reasonably can be conceived that would sustain it, and the existence of that state of facts at the time the law was enacted must be assumed. It makes no difference that the facts may be disputed or their effect opposed by argument and opinion of serious strength. It is the function of the legislature to discern and correct evils, and it may make discriminations if founded on distinctions that the court cannot pronounce unreasonable and purely arbitrary. (*Rast* v. *VanDeman & Lewis Co.* 240 U. S. 342.) It is competent for the legislature to determine upon what differences a distinction may be made for the purpose of statutory classification between objects otherwise having resemblance, though such power cannot be arbitrarily exercised and the distinction must have a reasonable basis. "It is to be remembered that the question presented is of the power of the legislature—not the policy of the exercise of the power. To be able to find fault, therefore, with such policy is not to establish the invalidity of the law based upon it." (*International Harvester Co.* v. *Missouri,* 234 U. S. 199.) The burden is upon the plaintiff in error, in assailing the classification made by the law, to show that it does not rest upon any reasonable basis but is essentially arbitrary. In determining the extent to which the right of persons to carry concealed weapons should be denied, the legislature was not bound, in order to support the constitutional validity of its regulatory act, to extend it to all cases to which it might possibly reach, but was free to recognize degrees of harm and to extend the exemption from the general prohibition to those classes of cases in which regard for the public peace and safety seemed most clearly to jus-

tify such exemption. "The scope of judicial inquiry in deciding the question of power is not to be confused with the scope of legislative considerations in dealing with the matter of policy. Whether the enactment is wise or unwise; whether it is based on sound economic theory; whether it is the best means to achieve the desired result; whether, in short, the legislative discretion, within its prescribed limits, should be exercised in a particular manner, are matters for the judgment of the legislature, and the earnest conflict of serious opinion does not suffice to bring them within the range of judicial cognizance." *Chicago, Burlington and Quincy Railway.Co.* v. *McGuire,* 219 U. S. 549.

The contention as to the various omitted cases mentioned in the objections urged to the classification ignores the principle that the legislature is not bound to extend its regulations to all cases to which it might possibly reach. Every private individual may be placed in circumstances where he is as much in need of the protection of a deadly weapon as the persons excepted in the section of the statute under consideration, but the statute is not unconstitutional because everyone is not included within the persons who are excepted from its prohibition. The employees of railroad and express companies are constantly engaged in the transportation of money and valuable property on trains running on regular schedules by day and by night, through large cities, smaller towns, villages, hamlets, long stretches of sparsely populated and ill-policed territory. They are constantly exposed to attacks by robbers, which frequently result in great loss of property and sometimes of life, and the act of the legislature in holding that the character of their employment is such as to justify its placing them in a different class with regard to the right to carry fire-arms from the persons mentioned in the plaintiff in error's objections who are omitted from the exemption, is certainly not such an arbitrary act as would justify the holding of the section unconstitutional.

It is contended that the information is void because it contains no averment that the plaintiff in error was not a conductor, baggageman, messenger, driver, watchman, special agent or policeman employed by an express company and engaged in the discharge of his duties as such employee or agent. The section in question in its first sentence defines the crime against which it is directed: "No person shall carry concealed on or about his person a pistol, revolver or other fire-arm." This objection to the information is based on the proposition that the subsequent provision of the section, that the prohibition shall not apply to certain persons, is a part of the description of the offense, and *People* v. *Barnes,* 314 Ill. 140, and *People* v. *Martin,* id. 110, are cited to sustain this proposition. These cases merely announce the established rule that where an act is made criminal, with exceptions embraced in the enacting clause creating the offense so as to be descriptive of it, the People must allege and prove that the defendant is not within the exception so as to show that the precise crime has been committed. Where the exception is descriptive of the offense it must be negatived in order to charge the defendant with the offense. The other branch of the rule is equally well established, that if the exception or proviso is in a subsequent section, or in the same one but not incorporated within the enacting clause by any words of reference, it need not be negatived but is a mere matter of defense. (*People* v. *Callicott,* 322 Ill. 390; *People* v. *Talbot,* id. 416; *People* v. *Butler,* 268 id. 635; *Sokel* v. *People,* 212 id. 238.) These cases illustrate the application of the rule. The last was a prosecution for bigamy, and the statute excepts from its operation, by a proviso to the section creating the offense, any person whose husband or wife shall have been continually absent from such person for five years prior to the second marriage, such person not knowing the husband or wife to be living within that time, and any person who at the time of such second marriage

had been divorced or whose former marriage had been declared void. It was held that the circumstances stated in the definition of the crime completed the offense; that the proviso following, with its exceptions, was not in any manner descriptive of the crime; that the division of the statute into sections was of no practical importance; and that it was not necessary to allege or prove the exceptions contained in the proviso. The *Butler case* was similar. The defendant was convicted of taking indecent liberties with a child. The act defining the offense contains a single section, concluding with the proviso that the act shall not apply to offenses constituting the crime of sodomy, or other infamous crime against nature, incest, rape or seduction, and it was held that the indictment need not negative the exceptions in the proviso. In *People* v. *Callicott, supra,* the question of the allegations necessary to be contained in an indictment for carrying a concealed deadly weapon was considered. The statute on the subject then under consideration was the act of 1919, (Laws of 1919, p. 431,) the first section of which described the offense. Section 5 exempted from the act certain classes of persons, and it was held not necessary to negative these exceptions. The same rule was applied in all the cases, that if an exception or proviso in the enacting clause of a statute defining an offense is so incorporated with the language of the definition that the elements of the offense cannot be accurately described without reference to the exception, the exception must be negatived in the indictment; but if the exception, instead of being a part of the description of the offense, merely withdraws certain acts or certain persons from the operation of the statute it need not be negatived, and its position, whether in the same section or in another part of the act, makes no difference.

It is also contended that the information is void because it charges the offense to have been "in violation of section 4, Senate Bill 348, in effect July, 1925." The act

was introduced in the legislature as Senate Bill No. 348, and the Governor having failed to return the bill during its session to the General Assembly, which adjourned *sine die* on June 30, 1925, and having filed it in the office of the Secretary of State without signature or objections on July 3, 1925, it became a law on that day. The statement in the information in regard to these facts is mere surplusage, but the facts alleged show a violation of the act, and the surplusage does not vitiate the charge.

The record shows that a detective bureau squad entered a saloon on November 29, 1926, about 7:30 P. M. The plaintiff in error and several others were there playing cards in a back room and the officers searched them. The officers had no warrant and before the search there was no evidence that any of the occupants were violating the law. The violation was discovered as the result of the search of the plaintiff in error. The information was filed on December 1, 1926, and on that day the plaintiff in error filed his petition to suppress and exclude the evidence gained by the search because the forcible search and seizure of his person was contrary to the rights guaranteed him by the fourth amendment to the Federal constitution and sections 2 and 6 of article 2 of the State constitution, and the admission in evidence of any property so seized would violate the fifth amendment to the Federal constitution and section 10 of article 2 of the State constitution. After a hearing the court overruled the motion. Upon the trial the plaintiff in error objected to the introduction in evidence of the revolver claimed to have been found upon him but his objection was overruled, and he now insists that he has been deprived of his constitutional rights. The testimony of witnesses that the revolver was found concealed on his person was received without objection and showed that the plaintiff in error was guilty of the offense with which he was charged. The introduction of the revolver in evidence added nothing to the value or strength of the testi-

mony. The whole matter depended upon the credibility of the witnesses as to the finding of a revolver on the person of the plaintiff in error. The showing of a revolver to the jury as the one found added nothing to and detracted nothing from the value of the testimony of the witnesses. It was not controverted that a revolver was found by the officers. The defense was that it was not found on the person of the plaintiff in error.

It is finally contended that the evidence did not support the judgment. The evidence was conflicting. Officer Ruff testified that the revolver was found by him under the coat of the plaintiff in error, on the left side of the trousers, inside the belt. Officer Liebeck testified that Ruff took the revolver from the front of Saltis' trousers. Saltis as a witness denied that the revolver was taken from his person. Officer Doyle did not see the finding of the revolver. Officer Healy, although watching the search, did not see Ruff find the gun. Sullivan, Kowczynski and Kolesiak, who were of those searched, testified that the gun was found on the settee,—the first two that it was lying between Kowczynski and Saltis, and the third that it was in the corner of the settee. Kowczynski was the proprietor and claimed that he owned the revolver. It is clear that this question of fact depended upon the credit which the witnesses were given by the trial court. The evidence was conflicting, and there is no reason why this court should disturb the finding of the trial judge, who saw and heard the witnesses.

The judgment of the municipal court is affirmed.

*Judgment affirmed.*