The People of the State of Illinois, Defendant in Error,
v. Abe Allen, Plaintiff in Error.

Gen. No. 36,924.

Opinion

filed June 20, 1934. Rehearing denied July 9, 1934.

WILLIAM SCOTT STEWART, for plaintiff in error.

THOMAS J. COURTNEY, State's Attorney, for defendant in error; EDWARD E. WILSON and GRENVILLE BEARDSLEY, Assistant State's Attorneys, of counsel.

MR. JUSTICE HEBEL delivered the opinion of the court.

This writ of error was prosecuted in the Supreme Court to review the record of the defendant's (plaintiff in error) conviction in the criminal court of Cook county for violating the Motor Fuel Tax Law (1929), Cahill's St. ch. 95a, ¶ 79 *et seq.* The indictment returned contains 17 counts, the last of which was *nolled* on the trial. The jury returned a verdict of guilty on the other 16 counts, and the court sentenced the defendant on each of the first six counts to pay a fine of $500 and to be imprisoned for six months in the House of Correction of the City of Chicago, the sentences to run consecutively, and on each of the remaining counts to six months' imprisonment in the House of

Correction, all to run concurrently with the sentence on the first six counts. The offenses of which the defendant was convicted were misdemeanors.

The 16 counts on which the defendant was found guilty are substantially alike, and each charges that the defendant, Abe Allen, on the first day of a specified month, and continuously thereafter during said month, in the county of Cook and State of Illinois, transported into the State of Illinois, and into the county of Cook, and received in the county of Cook, a large amount of motor fuel transported by him from without the State for sale and use in the State, the quantity of motor fuel so transported and received during the month being more than 20 gallons, but the exact amount thereof being to said grand jurors unknown, and then and there sold within the county of Cook a large amount, to wit, the amount so received, and then and there collected from the purchasers of said motor fuel a tax of three cents per gallon on all motor fuel so sold by him as aforesaid, and wilfully failed and refused to make payment to the Department of Finance of the State, or to the State, of the amount of taxes so collected on said sales. The first count is for the month of March, 1930, and each succeeding count lays the charge one month later than the count preceding it. The writ of error was sued out in the Supreme Court on the ground of constitutional questions being involved, and that court held in the case of *People v. Allen,* 352 Ill. 262, that no fairly debatable constitutional question appears to be involved in the judgment of the criminal court, and a writ of error does not lie from this court to review the record, and the cause was thereupon transferred to this court.

The defendant in this case has stated in his brief that there is very little conflict in the evidence, that in fact there is none which concerns the errors complained of by the defendant. The facts, as they appear from

the statement in the defendant's brief, are that Abe Allen was, during the time covered by the various counts, in the gasoline business under the name of Midway Refining Company. He maintained two places, referred to as bulk plants, used for storage, with a total capacity of 74,000 gallons. The defendant also operated or had an interest in the operation of some filling stations. Employees from two of his dealers, that is, Standard Oil Company and Phillips Petroleum Company, testified to sales of gasoline made to Allen. A number of operators and employees of filling stations, bus lines and cartage companies testified to purchases of gasoline from Allen. It was shown by these purchasers that each paid to Allen, in addition to the price of the gasoline, three cents per gallon for the tax. Allen did not have a license as a distributor, nor did he make any monthly returns or payments to the Department of Finance of the State of Illinois. That tank car sales made by the Standard Oil Company to Allen covered a period extending from March 4, 1930 to March 11, 1931, and amounted to about 90 tank carloads, totaling over 800,000 gallons.

The method of handling the gasoline, upon which there is no dispute, was as follows: Allen would order a carload of gasoline from the Standard Oil Company through its office on Michigan avenue in Chicago. Upon receipt of the order, that company would cause the carload to be shipped from Whiting, Indiana, to South Holland, Illinois, over the Baltimore and Ohio and Chicago Terminal Railroad Company. A uniform bill of lading was used in each case designating the Standard Oil Company as consignor and also as consignee. The Standard Oil Company paid the freight and charges, which it collected as part of the sale price. This company at the time mentioned was a licensed distributor under the law, but did not ask for, nor did Allen pay, any tax upon the gasoline so shipped.

When Allen received notice from the Standard Oil Company that it was ready to make delivery to him, he went to its Chicago office on Michigan avenue and paid for the gasoline, whereupon one of the employees of the company indorsed the bill of lading and delivered the same to Allen.

After payment and obtaining the bill of lading so indorsed in each instance, the defendant Allen arranged with the Chicago and Eastern Illinois Railroad Company to haul the gasoline the short remaining distance from a yard near South Holland to his bulk plant in that neighborhood, and the gasoline was disposed of as hereinabove stated, and upon a trial before the court, with a jury, a verdict of guilty was returned by the jury and sentence was entered as herein stated.

The indictment is questioned as to its sufficiency, and the defendant stresses the point that the indictment does not state facts with such certainty as the nature of the offense will admit, that the indictment in the first count and the several other counts is alike, except that the crime is alleged to have been committed on the dates set up in each count, and alleges in the first count March 1, 1930, and continuously thereafter during said month, in the county of Cook, the defendant transported into the State of Illinois and received in said State a large quantity of motor fuel transported to him from without the State for the purpose of sale and use in this State, the quantity being more than 20 gallons, the exact amount being unknown; that he sold the gasoline so received, and collected from the purchasers a tax on all gasoline sold by him, and then wilfully failed and refused to make payment to the Department of Finance of said State or to said State, of the amount of taxes so collected, or any part thereof, and that the facts alleged in the several counts of the indictment do not constitute an offense under the laws of this State, or is there sufficient charge from which

it appears that the provision of the Motor Fuel Tax Law of this State was violated.

Section 1 of the Motor Fuel Tax Law, Cahill's St. ch. 95a, ¶ 79, defines a distributor in these words:

" 'Distributor' means a person who, for sale or use in this State, either produces, refines, compounds or manufactures motor fuel in this State, or transports motor fuel into this State or receives motor fuel transported to him from without the State. It does not, however, include a person who receives or transports into this State and sells or uses motor fuel under such circumstances as precludes the collection of the tax herein imposed, by reason of the provisions of the constitution and statutes of the United States. However, a person operating a motor vehicle into the State, may transport, in the ordinary fuel tank attached to the motor vehicle, not more than twenty gallons of motor fuel, for the operation of the motor vehicle, without being considered a distributor."

The duties of a distributor are set forth in section 6 in these words:

"Each distributor who sells any motor fuel for any purpose after July 31, 1929, shall collect from the purchaser at the time of such sale, three cents per gallon on all motor fuel sold, and at the time of making the monthly return, the distributor shall pay to the Department of Finance, the amount so collected, '(less the deduction hereinafter provided)' and shall also pay to the department three cents per gallon on all motor fuel used by him during the period covered by the return. Each distributor shall determine the actual cost of making the collection and payment above provided on sales of motor fuel, subject to the approval of the Department of Finance, and such actual cost not to exceed 2 per cent of the amount so collected, shall be deducted from the amount to be paid by the distributor to the department. In each subsequent sale

of motor fuel on which the three cents per gallon has been collected as herein provided, the amount so collected shall be added to the selling price, so that said amount is paid ultimately by the user of said motor fuel. However, no collection or payment shall be made in the case of the sale or use of any motor fuel which may not, under the constitution and statutes of the United States, be made the subject of taxation by this State." Cahill's St. ch. 95a, ¶ 84. And section 15 provides for the penalty for a violation of this act.

The charge in the indictment is to the effect that the defendant, after bringing gasoline into the State as a distributor, sold it, charged a tax for it and did not pay the tax to the State of Illinois. This charge is clear and is expressed substantially in the language of the statute. The defendant pointed out that an integral part of the statute defining a distributor requires a negative averment, and contends that since there is no negative averment in the indictment the indictment is faulty. He plainly refers to that part of section 1 which is in these words: "It does not, however, include a person who receives or transports into this State and sells or uses motor fuel under such circumstances as precludes the collection of the tax herein imposed, by reason of the provisions of the constitution and statutes of the United States. However, a person operating a motor vehicle into the State, may transport, in the ordinary fuel tank attached to the motor vehicle, not more than twenty gallons of motor fuel, for the operation of the motor vehicle, without being considered a distributor." In this connection it is necessary to have in mind the rule of pleading upon this question. The Supreme Court in the recent case of *People v. Saltis,* 328 Ill. 494, said: "This objection to the information is based on the proposition that the subsequent provision of the section, that the prohibition shall not apply to certain persons, is a part of the description of the offense, and *People v. Barnes,* 314

Ill. 140, and *People v. Martin,* id. 110, are cited to sustain this proposition. These cases merely announce the established rule that where an act is made criminal, with exceptions embraced in the enacting clause creating the offense so as to be descriptive of it, the People must allege and prove that the defendant is not within the exception so as to show that the precise crime has been committed. Where the exception is descriptive of the offense it must be negatived in order to charge the defendant with the offense. The other branch of the rule is equally well established, that if the exception or proviso is in a subsequent section, or in the same one but not incorporated within the enacting clause by any words of reference, it need not be negatived but is a mere matter of defense. (*People v. Callicott,* 322 Ill. 390; *People v. Talbot,* id. 416; *People v. Butler,* 268 id. 635; *Sokel v. People,* 212 id. 238.)''

The indictment under consideration is clearly within the rule announced by the Supreme Court in that the exception not being incorporated in the enacting clause by any words of reference, there need not be a negative averment, but the exception would be a matter of defense, nor is the exception or proviso defining the offense so incorporated in the language of the definition that the offense cannot be described without reference to the exception, and moreover wherever the act withdraws certain persons or acts from the operation of the statutory provision, it is not necessary to allege that certain acts are withdrawn from the operation of the statute.

In the consideration of the points made regarding the sufficiency of this indictment containing the several counts, we are of the opinion from the facts alleged that the defendant had sufficient notice of the crime charged.

The Supreme Court in the consideration of this case, in its opinion in *People v. Allen,* supra, construed the indictment and the expression of the court in several

respects as material in disposing of the contention of the defendant in regard to the sufficiency of the indictment in question. The court in its opinion said: "The plaintiff in error argues that the common law procedure of grouping several misdemeanor counts in one indictment is unconstitutional when used for the purpose of verdict and judgment where willfulness is the gist of the action complained of and where the alleged offense is a series of similar transactions with one common intent running through all the counts. In *People v. Elliott,* 272 Ill. 592, an indictment was returned in the circuit court of Macon county against the plaintiffs in error for selling intoxicating liquor in anti-saloon territory. There were seventy-one counts in the indictment, and upon a trial the plaintiffs in error were found guilty on each of the seventy-one counts. Judgment was entered by the court on the verdict, sentencing each of the plaintiffs in error to pay a fine and to imprisonment in the county jail under each count. The court held that the State may join misdemeanors of the same character in the same indictment and the court may fix separate punishments upon each count on which there was a conviction. This practice had been approved by this court before the decision in *People v. Elliott* and has been followed since."

One of the questions called to the attention of this court by the defendant is that the venue was not properly established in the county of Cook and State of Illinois, and the defendant admits that the Supreme Court, in the case of *People v. Allen, supra,* held: "The allegation is that the motor fuel was sold, the tax was collected and the failure and refusal to pay occurred within the county of Cook. The offense was therefore alleged to have been committed in the county of Cook and that was the county in which the constitution guaranteed to the defendant a trial by jury. No constitutional question was raised by the motion to quash or the trial of the plaintiff in error in Cook county." The

defendant suggests, however, the record does not disclose that the evidence introduced was sufficient to prove that the crime was committed in the county of Cook, and that being so the failure of evidence to establish this venue was not passed upon by the Supreme Court upon a prior hearing.

The evidence is undisputed that the defendant brought 800,000 gallons of gasoline from without the State into this State and sold, as a distributor, the gasoline in Cook county, Illinois, and collected the tax, which tax so collected by the defendant was not paid to the State of Illinois and the defendant contends as a reason that the evidence does not disclose there was a branch office, for the collection of this tax in Cook county, and therefore for lack of such proof the crime was not committed in the county of Cook. It would be a defense to show that the tax collected was paid to the proper collection official of the State of Illinois, whether at the seat of government or at a branch office. The fact remains that the defendant still has the money collected as a tax on gasoline sold by him, which he admits he did not report to the proper office in the manner provided for by the statute. From these facts as they appear in the record and upon consideration of what the Supreme Court said upon this very question, which is hereinbefore quoted, this court is of the opinion that there is evidence sufficient to establish the venue in Cook county.

Instruction No. 14, given upon request of the People, is questioned by the defendant, and is as follows:

"The court instructs the jury that each distributor who sells any motor fuel for any purpose shall collect from the purchaser at the time of said sale three cents per gallon on all motor fuel sold and at the time of making the monthly return the distributor shall pay to the Department of Finance the amount so collected.

"Every person acting as a distributor of motor fuel shall, between the 1st and 20th day of each calendar

month, make return, under oath, to the Department of Finance, showing the amount of motor fuel purchased, produced, refined, compounded, manufactured, received, sold, distributed and/or used by him during the preceding calendar month.

"Motor fuel means all volatile and inflammable liquids produced or compounded for the purpose of and which are suitable and practicable for operating motor vehicles.

"Distributor means a person who for sale or use .in this State transports motor fuel into this State or receives motor fuel transported to him from without the State.

"Whoever wilfully fails or refuses to make payment to the Department of Finance, as above provided, is guilty of a misdemeanor."

The defendant contends that this given instruction, being, in part, in the words of the statute, was erroneous for the reason that there is no evidence to warrant the giving of such an instruction. It is to be noted that the instruction is but directory and was given to inform the jury as to the nature of the charge, and does not attempt to instruct the jury as to the nature of their verdict, and is not so erroneous as to justify a reversal.

The question is raised by the defendant that the Act of 1929 was repealed by the Act of 1931. We have but to refer to the statutory provision relating to the construction of statutes in par. 4, ch. 131, Cahill's Ill. Rev. St., which eliminates this question in these words:

"No new laws shall be construed to repeal a former law, whether such former law is expressly repealed or not, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done,

or any penalty, forfeiture or punishment so incurred, or any right accrued, or claim arising before the new law takes effect, save only that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceeding. If any penalty, forfeiture or punishment be mitigated by any provisions of a new law, such provision may, by the consent of the party affected, be applied to any judgment pronounced after the new law takes effect. This section shall extend to all repeals, either by express words or by implication, whether the repeal is in the Act making any new provision upon the same subject or in any other Act."

It is also contended the evidence should have been admitted that the defendant's lawyer advised him upon the question whether the defendant would be liable to the State for the gasoline purchased and sold by the defendant as a circumstance in determining whether the law was wilfully violated. This evidence was incompetent, and the trial court was right in sustaining the State's objection to the admissibility of this proof. The evidence is clearly hearsay, and while advice of counsel to the defendant was important, still the advice given to the defendant if admitted would result in an immaterial issue upon the question of whether or not the advice was good law.

Upon the question of intent, which is one of the questions before this court, the legislature may provide that in doing a criminal act it does not necessarily follow that there must be an intent of the doer to violate the law, especially where, as in this case, the statute on the question of intent is silent as to motive. It is sufficient that the law was violated and the fact that the violator acted in good faith, or without knowledge, is no defense when a defendant is charged, as in this case, with violation of a provision of the criminal law. *McCutcheon v. People,* 69 Ill. 601.

. The remarks of the trial court have been called to the attention of this court as being prejudicial. We have examined the questioned language, and the words used were not so prejudicial as to influence the jury.

We have examined the various points called to our attention, and it does not appear to this court that there is reversible error in the record, and for the reasons stated in the opinion the judgment is affirmed.

*Judgment affirmed.*

HALL, P. J., and WILSON, J., concur.