THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* H. E. "PAUL" HALLEY, Defendant-Appellant—(PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MARLENE HALLEY, Defendant-Appellant.)

(No. 70-141;

Fifth District—March 11, 1971.

Paul Bradley, of Defender Project, of Mt. Vernon, for appellant.

Peyton Berbling, State's Attorney, of Cairo, for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

In separate complaints the defendants, husband and wife, were charged with Unlawful Use of Weapons in violation of Section 24–1(a)(4) of Chapter 38, Illinois Revised Statutes, 1969, in that they knowingly carried concealed on or about their person a pistol or revolver, not on their own premises or in their own abode or in their fixed place of business. The cases were consolidated and in a non-jury trial each of the defendants was found guilty and fined $100.00.

The evidence established that the defendants were at the Riveira Club in McClure, Illinois, on two separate occasions during the late evening hours of May 24, 1970. Leonard Woodard, manager of the Riviera Club, testified that he had an argument with defendant H. E. "Paul" Halley in the parking lot outside the club and during the course of the argument both he and Halley got out pistols. The witness described the pistol produced by Halley as a snub-nose revolver, stating he had observed it from a distance of seven or eight feet. Defendants left the club but returned later and ordered drinks and when service was refused another argument ensued. A deputy sheriff was called and came to the club. Outside the club the second time defendant H. E. "Paul" Halley was handed a pistol from under his car by one Reiston. The witness Woodard testified that on this occasion defendant Marlene Halley took a pistol out of her purse and showed it to the deputy sheriff. He described it as a snub-nose thirty-eight. On cross examination he stated that he did not see a firing pin on the pistol held by defendant H. E. "Paul" Halley, did not see bullets in it, could not tell whether the barrel was open or might have had a lead plug in it and could not in fact see that it was a gun capable of firing. Regarding Mrs. Halley's pistol, he stated he did not know if it had a firing pin,

bullets or whether or not the barrel was open. Robert Fisher testified that he saw both defendants on the second occasion in question. From a distance of approximately fifteen feet he saw Mr. Halley standing with a pistol in his hand. He described it as a hand gun, probably a thirty-eight caliber. He did not see whether it had a firing pin, whether there were bullets in it, whether the barrel was open or leaded in, or whether it was a fake or toy gun. No arrests were made on the night of the incidents and the guns were not taken from defendants. No shots were fired on either occasion and no pistol or other firearms were introduced in evidence. Defendants did not testify or offer any other evidence in their own behalf.

It is defendants' position that the State failed to prove beyond a reasonable doubt that either defendant was in possession of a pistol or revolver which was a firearm within the meaning of Chapter 38, Section 83—1.1, Illinois Revised Statutes, 1967, which defines a firearm as:

"Any device, by whatever name known, which is designed to expel a projectile or projectiles by the action of an explosion, expansion of gas or escape of gas."

Defendants argue that the testimony of the witnesses describing the objects produced by defendants as pistols was opinion or conclusion upon the part of the witnesses. They emphasize admissions by the witnesses that they saw no firing pins, bullets, or open barrels in the guns, and that they could not tell to a certainty that the guns would actually fire or that they were not toys. Since no shots were fired and the pistols were not taken from defendants or produced in evidence the State has wholly failed to prove that the objects were firearms within the meaning of the statute and to describe them as such was pure speculation. This, it is argued, is not sufficient to overcome the presumption of innocence and sustain the State's burden of proof of guilt beyond a reasonable doubt. No question is raised concerning concealment on or about the persons of defendants.

■■ We are not cited nor are we able to find any Illinois case where a defendant has been convicted of Unlawful Use of Weapons when the weapon was not introduced in evidence. We think it clear, however, that it was not a necessary part of the State's case to prove that the pistols were loaded with bullets, contained a firing pin, had open barrels or were otherwise in an operable condition. It is established that it is unnecessary to prove that a gun is a deadly weapon. (*People v. Merritt,* 367 Ill. 521, 12 N.E.2d 7; *People v. Dwyer,* 324 Ill. 363, 155 N.E. 316.) It has often been held by courts in other states that a conviction may be had for carrying concealed weapons although the gun in question was not loaded. (*Ridenour v. State,* 65 Ind. 411 (1879); *Brooks v. State,* 215

S.W.2d 785 (Tenn., 1948). Cf. annotations 79 A.L.R.2d 1430, and 74 A.L.R. 1211.) In a prosecution for violation of Section 2 of the Unlawful Use of Weapons statute (Chapter 38, Section 24—1(a)(2), Illinois Revised Statutes, 1963) in that defendant "knowingly carried and possessed a dangerous or deadly weapon * * * with intent to use the said weapon unlawfully against another," it is unnecessary to prove that the gun (a rifle) used by defendant was loaded. (*People v. Musselman,* 69 Ill.App.2d 454, 217 N.E.2d 420.) In a case where it was alleged that defendant had committed the offense of Unlawful Possession of a Firearm (in violation of Chapter 38, Section 24—3.1(a)(1), Illinois Revised Statutes) in that he knowingly carried on his person a firearm described as a zip gun, it was not necessary for the State to prove that the instrument was in an operable condition. (*People v. Hughes,* 123 Ill.App.2d 115.) In *State v. Morris,* 172 S.W. 603 (Missouri, 1915) it was held that it was not necessary to prove that the pistol in question was a dangerous and deadly weapon, that proof that its appearance and characteristics were those of a pistol authorizes its classification by the jury as a firearm. Also see *Atwood v. State,* 53 Ala. 508 (1875); *State v. Tapit,* 52 W. Va. 473; *Commonwealth v. Murphy,* 166 Mass. 171.

■■ The foregoing cases and authorities reflect a strong public policy to dissuade persons from carrying and brandishing weapons or an "objects" which have the appearance or characteristics of a firearm. The witnesses testified that they observed the objects produced and held by the defendants from a distance of seven to fifteen feet. It is apparent that they had a good opportunity to form a judgment as to what the objects were. They were described by the witnesses to be pistols of a particular type and caliber. It is not unusual for one viewing a gun from the muzzle end to be unsure of the presence of a firing pin, bullets and an open barrel or its firing capabilities. Much sorry experience has taught members of our society to be inclined to accept such "objects" for what they appear to be and what they are represented to be, firearms. To establish a violation of the statute prohibiting the carrying of a firearm, it is sufficient to show that the weapon possessed the outward appearance and characteristics of such pistol, revolver or other firearm; it is immaterial that such weapon is not loaded, has no firing pin or open barrel, or is otherwise inoperable. Coupled with the observations of the witnesses were the circumstances under which the pistols were produced by the defendants. The incidents did not occur during a time of jocular horse play, but, as shown by the record, during a time of acrimony, threat and argument. The trial court heard the testimony of the witnesses and their description of the pistols produced at the time of the altercation and weighed the

testimony in the total context of the evidence and concluded that the objects produced and held by the defendants were pistols. We think the conclusion of the trial court is fully supported in the record.

Defendants rely on *People v. Ortega*, 83 Ill.App.2d 49, 226 N.E.2d 426, where it was held that a stipulation that if a police chemist were called to testify, he would say that a substance in question "purports to be" heroin was insufficient to prove beyond a reasonable doubt the substance was heroin. The opinion states:

"Our question, therefore, is whether proof that a substance 'purports to be' narcotic constitutes proof beyond a reasonable doubt that it is narcotic. The answer must be that it does not. While it is true that under the generally understood meaning of the word, 'purport,' an object which purports to have a certain characteristic may, or perhaps usually does, in fact, possess that characteristic, it does not always do so. In any given case the speciousness of a purported attribute is a definite possibility. And that ever-present possibility is, in our opinion, sufficient to raise a reasonable doubt as to the attribute claimed."

■■ Defendants contend that absent the pistols as evidence the description of the objects produced by defendants as pistols is analogous to the proof in the *Ortega* case that the substance which "purports to be heroin," was in fact heroin. The State counters this by stating that competent evidence has established the guilt of defendants beyond a reasonable doubt, and since the pistols were not taken from the defendants and have not been otherwise accounted for presumably they are still in the possession of the defendants and if they were in fact something other than that described by the State's witnesses it was incumbent upon defendants to produce the pistols for evidence to refute the case made by the State. In support of its position the People cite *State v. Lewis*, 186 N.E.2d 487, Ohio, 1962, a case similar to this one on its facts. There the defendant was prosecuted for Assault With a Deadly Weapon. Two witnesses who had been accosted by defendant described the weapon used as a thirty-eight caliber automatic. The defendant did not testify or produce any evidence. The weapon was not introduced in evidence and there was no evidence as to whether the pistol was loaded or unloaded. It was held that the trial court properly refused to instruct the jury that it was necessary for the State to prove that the pistol used by defendant was loaded; that when a gun is used under such circumstances as shown by the evidence the presumption is that the gun is loaded in the absence of evidence that it is unloaded; that the burden of proof that it was unloaded was upon the defendant. The court stated that to hold otherwise would place an impossible burden on the State and render the statute nugatory when a gun is used as a means of accomplishing the assault.

In traverse of the proposition advanced by the State the defendants argue that they cannot be required to testify or produce the pistols in evidence since that would shift the burden of proof to the defendants and violate their constitutional right to remain silent. It should be noted here that this is not an instance where a defendant has raised an affirmative defense and has a statutory duty to present evidence thereon. Illinois Revised Statutes, Chapter 38, Section 3—2.

The initial reaction to defendants position is that it is well taken for it is a corner-stone rule of the criminal law that every person is presumed innocent until proven guilty beyond a reasonable doubt and that the burden of proof of guilt is upon the State and never shifts to the defendant, and that the defendant need not prove his innocence. (Illinois Revised Statutes, 1967, Chapter 38, Section 3—1; *People v. Schultz-Knighten,* 277 Ill. 238, 115 N.E. 140; *People v. Magnafichi,* 9 Ill.2d 169, 137 N.E.2d 256.) However, after the guilt of defendants was established by competent evidence, if they contended that the objects brandished by them were not pistols, revolvers, or other firearms within the purview of the statute, and they having them in their possession or control, it was incumbent upon them to produce such objects for evidence in order to disprove the State's evidence and support their defense. To place such a burden on defendants is not offensive to their constitutional right to remain silent nor does it represent a shift in the burden of proof from the State. The concept of requiring defendants to come forward with evidence in such cases is no novelty in criminal jurisprudence. Defendants' contentions in this regard are met by *People v. Williams* (1968), 40 Ill.2d 522, 240 N.E.2d 645. That was a prosecution for murder. The State was unable to produce the gun used and the defendant did not testify or offer any other evidence. In his opening statement and closing argument the prosecutor commented at length upon the failure of the defendant to produce the gun. Defendant contended that the statements were highly prejudicial, jeopardized his presumption of innocence, constituted a denial of his Federal and State constitutional guarantees against self-incrimination, and were in violation of the provision of the statute prohibiting any reference or comments on his failure to testify. The court analyzed the privilege against self-incrimination and the reason for the prohibition against commenting on his failure to testify and stated that their purpose "is to prevent prejudice to an accused from his failure to testify, but *not* to prevent prejudice to his case from his failure to produce evidence to establish his defense." The court cited *Schmerber v. California,* 384 U.S. 757, 16 L.Ed.2d 908, 86 S. Ct. 1826, *People v. Mulack,* 40 Ill.2d 429, 240 N.E.2d 633, and *Holt v. United States,* 218 U.S. 245, 54 L.Ed. 1021, 31 S. Ct. 2, for the proposition that the privilege against self-incrimination protects an accused only from

being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature and does not relate to the production of other physical evidence or evidence from witnesses. The court noted that it is proper to comment in final argument upon the failure of the defendant to call witnesses to refute or explain evidence produced by the State, citing *People v. Lion*, 10 Ill.2d 208, 139 N.E.2d 757, *People v. Miller*, 278 Ill. 490, 116 N.E. 131, and *People v. Sicks*, 299 Ill. 282, 132 N.E. 573. The court concluded:

"* * * that though failure to call a witness or produce evidence may not be relied on as substantial proof of the charge, nonetheless, if other evidence tends to prove the guilt of a defendant and he fails to bring in evidence within his control in explanation or refutation, his ommission to do so is a circumstance entitled to some weight in the minds of the jury, and, as such, is a legitimate subject of comment by the prosecution. In the case before us there may have been some reason for failing to produce the gun in question * * * but none was given and consequently defendant's non-production was a subject for consideration and also for comment * * * Defendant's voluntary failure to produce evidence in explanation or refutation may have prejudiced his case in the minds of the jury in that their consideration was limited only to the facts before them and the legitimate inferences to be drawn therefrom, but this did not prejudice the defendant regarding his failure to testify personally."

The *Williams* and *Lewis* cases *(supra)* are not the only authority for the proposition. At 74 A.L.R. 1206 is an annotation dealing with the question of whether an unloaded firearm is a dangerous weapon. At page 1208 of that annotation it is stated, "It is generally held that it is a matter of defense to show that the weapon was unloaded, rather than a substantive part of the State's case to aver and to prove that it was loaded." Also see Wharton's Criminal Evidence, Twelfth edition, Section 14. In *People v. Kulig*, 373 Ill. 102, 25 N.E.2d 73, it was held that the defendant's constitutional right not to be compelled to give evidence against himself was not invaded by holding that the unexplained possession of property recently stolen raises a presumption of guilt where the *corpus delicti* has been proved; that the recent unexplained possession of stolen property rule did not violate the statute which provides that the failure of a defendant to testify shall not create any presumption against himself nor permit inference or comment to be made to or upon such neglect. (See also *People v. Hawkins*, 27 Ill.2d 339, 189 N.E.2d 252; *People v. Boulahanis*, 50 Ill. App.2d 440.) In *People v. Wilson*, 375 Ill. 506, 31 N.E.2d 959, it was held that in a prosecution for selling securities in violation of the registration

feature of the act, the burden is on the People to prove that the securities sold are of a class that was required to be registered but that the burden was on the defendant to show the securities were sold under circumstances which brought the selling within one of the exceptions specified in the statute. The court stated,

"It is a well established rule in this State that where the subject matter of a negative averment lies peculiarly within the knowledge of the other party the averment is taken as true unless disproved by the other party. *Kettles v. People*, 221 Ill. 221, 77 N.E. 472; *Wililams v. People*, 121 Ill. 84, 11 N.E. 881; 1 Greenleaf on Evidence, Section 39."

The *Kettles* case was a prosecution for practicing dentistry without a license. It was held that the People do not have the burden of proving that the defendant did not have a license since possession of a license is a matter of defense which devolves upon the defendant to establish. The *Williams* case was a prosecution for practicing medicine without possessing the requisite statutory qualifications. It was held that the burden of proving that he was possessed of the qualifications lay with the defendant since whether he was in compliance with the statute was peculiarly within his knowledge. *People v. Saltis*, 328 Ill. 494, 160 N.E. 86, was a prosecution for carrying a concealed weapon contrary to a statute enacted in 1925 (the predecessor of our present Unlawful Use of Weapons statute). The statute prohibited the carrying of a concealed weapon, revolver or other firearm and named certain categories of officials to whom the statutory prohibition did not extend. The defendant contended the information containing the charge against him was void because it did not aver that the defendant did not come within one of the excepted categories. The court held that it was a matter of defense for the defendant to show that he came within one of the exceptions of the statute. The rule of the *Saltis* case is now statutory. Exemptions to the Unlawful Use of Weapons statute, Chapter 38, Section 24–1, Illinois Revised Statutes, 1969, are contained in Chapter 38, Section 24–2, Illinois Revised Statutes, 1969, which provides, "The defendant shall have the burden of proving such exemption." For an enumeration of certain instances where statutes place the burden of going forward with evidence to disprove the State's *prima facie* case see the committee comments on the statute on Affirmative Defense, S.H.A., Chapter 38, sec. 3–2.

For the foregoing reasons the judgment of the trial court will be affirmed.

Judgment affirmed.

EBERSPACHER and G. MORAN, JJ., concur.