2025 IL App (4th) 241277-U

NO. 4-24-1277

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | McLean County |
| JAYLIN BONES, | ) | No. 23CF143 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | J. Jason Chambers, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Presiding Justice Harris and Justice Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, finding (1) defendant failed to show the unlawful possession of a weapon by a felon statute is facially unconstitutional or unconstitutional as applied to him and (2) defendant did not receive ineffective assistance when trial counsel did not object to testimony regarding a forensic lab report.

¶ 2    After a jury trial, defendant, Jaylin Bones, was convicted of two counts of unlawful possession of a weapon by a felon (UPWF) (720 ILCS 5/24-1.1(a) (West 2022)) for unlawfully possessing a firearm and ammunition as a felon. He was sentenced to two concurrent terms of 10 years' imprisonment. Defendant appeals, arguing (1) the UPWF statute under which he was convicted is facially unconstitutional pursuant to the United States Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), and unconstitutional as applied to him and (2) he received ineffective assistance of counsel when trial counsel did not object to testimony regarding an Illinois State Police (ISP) forensic lab report, where the

testimony was allegedly inadmissible hearsay and purportedly violated defendant's rights under the confrontation clause of the sixth amendment of the United States Constitution (U.S. Cont., amend. VI). We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        On February 2, 2023, the State charged defendant with two counts of UPWF for unlawfully possessing a firearm (720 ILCS 5/24-1.1(a) (West 2022)) and unlawfully possessing firearm ammunition (720 ILCS 5/24-1.1(a) (West 2022)), alleging he possessed a .40-caliber pistol and .40-caliber ammunition and was previously convicted of aggravated fleeing or attempting to elude a peace officer.

¶ 5        The matter proceeded to a jury trial. Sergeant Paul Jones of the Bloomington Police Department testified he helped transport defendant to the McLean County jail. During the process of booking defendant into the jail, Sergeant Jered Cook asked defendant to walk through a metal detector. Defendant began to approach the metal detector, but then he paused, "raised his hands up, and then began *** smiling and saying, ['J]ust don't shoot me, just don't shoot me.[' ]" After defendant was secured, Cook "removed a firearm from the crotch area" of defendant's pants. Cook removed the firearm's magazine and pulled back its slide, which ejected a cartridge from the chamber. Cook then handed the firearm to Jones, who placed it in an envelope and remained in possession of it until he returned to the police department, at which point he secured it in an evidence locker. Jones testified the firearm was a Smith & Wesson M&P Shield handgun, which held seven .40-caliber cartridges in its magazine and an additional cartridge in its chamber.

¶ 6        Cook testified he helped process defendant when he was brought to the McLean County jail. During a pat-down search, Cook felt something "alongside [defendant's] right leg,"

- 2 -

which he believed would be found during the subsequent strip search. However, when Cook ordered defendant to walk through the metal detector, defendant "paused before the metal detector and said something along the lines of [']don't shoot, don't shoot.['] " Officers secured defendant, and Cook discovered a handgun "right below [defendant's] waistband." When presented with People's exhibit No. 1, Cook testified it was the Smith & Wesson .40-caliber handgun he discovered in defendant's pants. On cross-examination, Cook specified the firearm was "an M&P Shield."

¶ 7        David Ashbeck, a crime scene detective with the Bloomington Police Department, testified he received special training regarding evidence handling, packaging procedures, and evidence collection. When presented with People's exhibit No. 1, Ashbeck testified, "This is a firearm that was submitted to me *** that I later packaged after taking photographs of it." Ashbeck described the firearm as "a Smith & Wesson [.]40[-]caliber semiautomatic pistol," with a magazine that held seven cartridges plus one in the chamber. When Ashbeck was given the firearm, he confirmed the magazine was loaded before emptying the magazine and photographing the ammunition. Ashbeck removed seven cartridges from the magazine, and there was a single cartridge that was turned in with the firearm. Ashbeck testified the ammunition was "all [.]40[-]caliber cartridges which match the firearm, and they are a combination of full metal jacket and hollow points." During Ashbeck's testimony, the State entered photographs of the firearm and ammunition into evidence.

¶ 8        Ashbeck testified all of the ammunition was .40-caliber, and the firearm was a .40-caliber handgun, but he did not personally put any of the ammunition into the firearm to confirm it would fire the ammunition successfully. Ashbeck asserted he knew the firearm had been test-fired, and it did fire ammunition. However, Ashbeck did not personally observe the

test-firing. Instead, his knowledge was based on the ISP forensic lab report.

¶ 9 After the State rested, trial counsel moved for a directed verdict, arguing the State failed to prove beyond a reasonable doubt the firearm in question was a real firearm or the ammunition was live firearm ammunition. Counsel argued the State merely presented hearsay evidence regarding whether the firearm actually fired, and counsel insisted the testimony asserting the exhibit entered into evidence was the same firearm discovered in defendant's pants was partially impeached. In response, the State argued the testimony presented showed the witnesses were familiar with both the firearm's model and the ammunition, and it was a real firearm. The State emphasized it did not have to show the firearm successfully fired live ammunition to prove defendant guilty of UPWF.

¶ 10 The trial court denied the motion for a directed verdict, saying:

"I recognize there was the testimony from [Ashbeck] that now when he said, he testified he was aware that it had been fired, it turns out that that was possibly through hearsay. I don't know if there's an exception to that or not. There was no objection to it at the time, so that testimony came in as it was. And based on everything in the light most favorable to the State, I think the State has met their burden at this point and the motion for directed verdict will be denied."

¶ 11 After the trial concluded, the jury found defendant guilty of both counts of UPWF. Defendant filed a motion for a judgment of acquittal or a new trial, which the trial court denied after a hearing. The court sentenced defendant to two concurrent terms of 10 years' imprisonment, to run consecutively to his sentence in McLean County case No. 23-CF-135.

¶ 12        This appeal followed.

¶ 13                                II. ANALYSIS

¶ 14        On appeal, defendant argues (1) the UPWF statute is unconstitutional both

facially and as applied to him and (2) he received ineffective assistance of counsel where trial

counsel did not object to Ashbeck's testimony regarding the ISP forensic lab report. We affirm.

¶ 15                            A. The UPWF Statute

¶ 16        First, defendant argues the UPWF statute is unconstitutional both on its face and

as applied to him. While defendant raises these challenges for the first time on appeal, "a

challenge to the constitutionality of a statute may be raised at any time." (Internal quotation

marks omitted.) *In re M.I.*, 2013 IL 113776, ¶ 39. "Statutes are presumed constitutional, and the

party challenging the constitutionality of a statute has the burden of clearly establishing its

invalidity. A court must construe a statute so as to uphold its constitutionality if reasonably

possible." *People v. Gray*, 2017 IL 120958, ¶ 57. "The constitutionality of a statute is a question

of law subject to *de novo* review." *Gray*, 2017 IL 120958, ¶ 57.

¶ 17                        1. *Defendant's Facial Challenge*

¶ 18        Defendant contends the UPWF statute (720 ILCS 5/24-1.1(a) (West 2022)) is

facially unconstitutional. "A statute will be deemed facially unconstitutional only if there is no

set of circumstances under which the statute would be valid." *People v. Bochenek*, 2021 IL

125889, ¶ 10. Relying on the test articulated in *Bruen*, defendant claims his conduct is covered

by the text of the second amendment (U.S. Const., amend. II), and the statute is not consistent

with our nation's historical tradition of firearm regulation. Specifically, defendant insists the

second amendment's plain text encompasses his possession of a weapon (see *People v. Brooks*,

2023 IL App (1st) 200435, ¶ 33), and there is a "strong presumption" that the right to keep and

bear arms belongs to "all Americans." *District of Columbia v. Heller*, 554 U.S. 570, 581 (2008). Defendant then asserts our nation has no historical tradition of prohibiting felons from possessing firearms.

¶ 19          This court has found the UPWF statute facially constitutional in *People v. Burns*, 2024 IL App (4th) 230428, ¶¶ 18-22. In *Burns*, the defendant raised both a facial and an as-applied constitutional challenge to the UPWF statute, relying on the test articulated in *Bruen*. *Burns*, 2024 IL App (4th) 230428, ¶¶ 15-16. Specifically, the defendant argued "his conduct of possessing firearm ammunition in his home was covered by the plain text of the second amendment," and the statute was "unconstitutional on its face and as applied to him because the State cannot prove that the statute is consistent with the United States's historical tradition of firearm regulation." *Burns*, 2024 IL App (4th) 230428, ¶ 16. We rejected the defendant's facial challenge, finding "the second amendment does not encompass felons," and therefore, " 'the *Bruen* decision does not apply to felons.' " *Burns*, 2024 IL App (4th) 230428, ¶ 20 (quoting *People v. Boyce*, 2023 IL App (4th) 221113-U, ¶ 16); see *People v. Gardner*, 2024 IL App (4th) 230443, ¶ 68 (relying on the rationale in *Burns* and *Boyce* to find *Bruen* does not apply to felons because they fall outside the second amendment's protections). Felons have been historically prohibited from possessing firearms. See *Heller*, 554 U.S. at 626 ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons."). "Thus, the defendant cannot show that his conduct was presumptively protected by the second amendment, and therefore, he does not fall within the scope of *Bruen*." *Burns*, 2024 IL App (4th) 230428, ¶ 21. This court has repeatedly reaffirmed our *Burns* holding. See *People v. Huff*, 2025 IL App (4th) 240762, ¶ 16 ("This court has already determined the UPWF statute is facially constitutional."); *People v. Bruce*, 2025 IL App (4th) 240706-U, ¶ 25 ("We continue to

adhere to our holding in *Burns*."); *People v. Pruitte*, 2024 IL App (4th) 240013-U, ¶ 36 ("We decline defendant's invitation to reconsider *Burns*."); *People v. Dillard*, 2024 IL App (4th) 231090-U, ¶ 27 ("In sum, we continue to adhere to our prior analysis.").

¶ 20　　　　We continue to adhere to our decision in *Burns*. Defendant's facial challenge here echoes the facial challenge raised in *Burns*, and it fails for the same reasons. As we found in that case, "*Bruen* simply does not apply to defendant." *Burns*, 2024 IL App (4th) 230428, ¶ 21. The same is true here. As a felon, defendant does not fall within the scope of the *Bruen* historical-tradition test. See *Burns*, 2024 IL App (4th) 230428, ¶ 21; *Bruen*, 597 U.S. at 71 (finding the New York statute at issue unconstitutional because it prevented "law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms"). Thus, we reject defendant's argument that the UPWF statute is facially unconstitutional. See *Burns*, 2024 IL App (4th) 230428, ¶ 21; see also *Dillard*, 2024 IL App (4th) 231090-U, ¶¶ 20-27; *Pruitte*, 2024 IL App (4th) 240013-U, ¶¶ 32-36; *People v. Mallery*, 2024 IL App (4th) 231397-U, ¶¶ 20-27; *People v. Stokich*, 2024 IL App (4th) 240192-U, ¶¶ 41-45.

¶ 21　　　　　　　　　2. *Defendant's As-Applied Challenge*

¶ 22　　　　Defendant also argues the UPWF statute is unconstitutional as applied to him. "[A]n 'as-applied' challenge protests against how a statute was applied in the particular context in which the challenging party acted or proposed to act." *Gray*, 2017 IL 120958, ¶ 58. "An as-applied challenge requires a showing that the statute violates the constitution as it applies to the facts and circumstances of the challenging party." *People v. Thompson*, 2015 IL 118151, ¶ 36. Because such challenges are necessarily dependent on the specific facts and circumstances of the person raising the challenge, "it is paramount that the record be sufficiently developed in terms of those facts and circumstances for purposes of appellate review." (Internal quotation marks

omitted.) *People v. Harris*, 2018 IL 121932, ¶ 39. "A court is not capable of making an 'as applied' determination of unconstitutionality when there has been no evidentiary hearing and no findings of fact." (Internal quotation marks omitted.) *Harris*, 2018 IL 121932, ¶ 39. Absent such an evidentiary record, a finding of unconstitutionality in the as-applied context "is premature." (Internal quotation marks omitted.) *Harris*, 2018 IL 121932, ¶ 39.

¶ 23        Once again, we find our decision in *Burns* instructive. There, we found the record was insufficiently developed to address the defendant's as-applied challenge because he raised it for the first time on appeal, and "no factual findings were made related to [the] defendant's prior conviction or how it pertained to his present claim relating to *Bruen*." *Burns*, 2024 IL App (4th) 230428, ¶ 17. The same is true here. Defendant raises his as-applied challenge for the first time on appeal, and the trial court did not conduct an evidentiary hearing on this specific claim, nor did it make any factual findings regarding defendant's particular circumstances. See *Burns*, 2024 IL App (4th) 230428, ¶ 17; *Harris*, 2018 IL 121932, ¶ 40. Accordingly, we find any determination regarding the constitutionality of the UPWF statute as it applies to defendant would be premature, and we decline defendant's invitation to consider the merits of his argument. See *Burns*, 2024 IL App (4th) 230428, ¶ 17; *Harris*, 2018 IL 121932, ¶ 39.

¶ 24                    B. Ineffective Assistance of Trial Counsel

¶ 25        Next, defendant argues he received ineffective assistance of trial counsel where counsel did not object when Ashbeck testified he knew the firearm taken from defendant was successfully test-fired based on the ISP forensic lab report. Defendant asserts counsel could have argued the testimony was inadmissible hearsay or that the testimony violated defendant's right to confront witnesses against him under the sixth amendment of the United States Constitution (U.S. Const., amend. VI). "To demonstrate ineffective assistance of counsel, a defendant must

show that (1) the attorney's performance fell below an objective standard of reasonableness and (2) the attorney's deficient performance prejudiced the defendant in that, absent counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different." *People v. Jackson*, 2020 IL 124112, ¶ 90. "Because the defendant must satisfy both prongs of this test, the failure to establish either is fatal to the claim." *Jackson*, 2020 IL 124112, ¶ 90.

¶ 26     Defendant contends trial counsel's failure to object constituted deficient performance, and he suffered prejudice because the evidence was closely balanced, such that there is a reasonable probability that the trial's result would have been different but for counsel's allegedly deficient performance. We disagree with defendant's prejudice claim and affirm the trial court's judgment without addressing whether counsel's performance fell below an objective standard of reasonableness.

¶ 27     Importantly, the State did not need to establish the firearm in question could fire ammunition successfully to prove defendant guilty of UPWF. See *People v. Halley*, 131 Ill. App. 2d 1070, 1073 (1971) ("To establish a violation of the statute prohibiting the carrying of a firearm, it is sufficient to show that the weapon possessed the outward appearance and characteristics of such pistol, revolver or other firearm."); *People v. White*, 253 Ill. App. 3d 1097, 1098 (1993) ("[I]t is sufficient to support a [UPWF] conviction that the object possessed the outward appearance and characteristics of a firearm, even if inoperable."). Both Jones and Cook testified the firearm removed from defendant's person was a Smith & Wesson M&P Shield handgun that fired .40-caliber ammunition. Cook testified he was "comfortable" with the type of firearm in question. When Cook retrieved the firearm, he removed its magazine and "put the gun slide to the rear," causing a cartridge to fall to the ground. Cook testified he "distinctly

remember[ed] what the gun looked like." Ashbeck testified the firearm was "a Smith & Wesson [.]40[-]caliber semiautomatic pistol." He confirmed the magazine fit in the handgun, and he removed the ammunition from the magazine to take pictures of it. Based on his training and experience, Ashbeck testified the ammunition was "all [.]40[-]caliber cartridges which match the firearm, and they are a combination of full metal jacket and hollow points." Ashbeck also testified regarding both the firearm's and the ammunition's respective distinguishing characteristics, and photographs of the firearm, magazine, and ammunition were entered into evidence during his testimony. See, *e.g.*, *People v. Hughes*, 123 Ill. App. 2d 115, 122 (1970) (finding the State was not required to show the firearm "was in an operable condition" to prove the defendant guilty of unlawfully possessing a firearm).

¶ 28 Even assuming, *arguendo*, trial counsel made a timely objection to Ashbeck's testimony regarding his reliance on the ISP forensic lab report and the trial court sustained the objection, there is not a reasonable probability the trial's result would have been different. See *Jackson*, 2020 IL 124112, ¶ 90. The State presented evidence defendant had previously been convicted of a felony, and multiple witnesses testified defendant possessed a Smith & Wesson M&P Shield handgun loaded with .40-caliber ammunition in his pants. The State did not need to present evidence showing the firearm was tested to determine whether it successfully fired ammunition to prove defendant guilty of UPWF. See *Halley*, 131 Ill. App. 2d at 1073. Defendant's ineffective-assistance claim fails because he was not prejudiced when counsel did not object to the testimony at issue. See *Jackson*, 2020 IL 124112, ¶ 90.

¶ 29                                III. CONCLUSION

¶ 30 For the reasons stated, we affirm the trial court's judgment.

¶ 31 Affirmed.