The People of the State of Illinois, Plaintiff-Appellee, *v.* Luther Coburn, Defendant-Appellant.

(No. 58680;

First District (5th Division)—January 10, 1975.

James J. Doherty, Public Defender, of Chicago (James N. Gramenos, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Michael J. Polelle, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

After a bench trial, defendant was found guilty of unlawful use of weapons, section 24—1(a)(7) of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 24—1(a)(7)) and sentenced to a term of 1 to 5 years. On appeal he contends that: (1) the State failed to prove beyond a reasonable doubt he possessed a sawed-off shotgun as charged; (2) the trial court erred in failing to suppress evidence secured as a result of an illegal search, and (3) he was denied his right to confrontation by the trial court's refusal to allow questioning of the prosecution witness concerning the identity of an informer.

EVIDENCE

At trial the parties stipulated that evidence presented at a hearing on defendant's motion to suppress physical evidence would be part of the trial.

Sergeant Robert Gaides for the prosecution, on the motion to suppress, testified in pertinent part as follows:

On March 17, 1972, he had a conversation with an informer whom he had known for about 4 to 5 years. The informer told him that a man whom he knew as Luthie Coburn had bragged to him during several conversations that he was wanted for a murder that had occurred several months prior. Coburn had shown the informer a Chicago policy daily bulletin with his picture and which stated Coburn was wanted in connection with a homicide investigation.

The informer indicated that the man was a 20- or 21-year-old male Negro whose hair had been dyed to a reddish tint and told the witness the address of the building where the man resided in the basement. Defendant had told the informer he would not be taken alive, and the informer had observed at least two sawed-off shotguns and one revolver in the basement apartment.

After taking the informer to the address to verify that it was in fact the house in which the informer said defendant lived, the witness found the daily bulletin in which there was a photo of a Luther Coburn wanted for homicide. He checked and verified that a warrant for defendant was still active and had not been served, but he never obtained the warrant

itself. The next evening, he took two detectives with him and conducted a surveillance of the premises. After leaving the area for 2 hours on another matter, the three returned to the premises and observed several Negro youths, 17 to 22 years old, entering and leaving the building using the rear side entrance. A male Negro having the same facial features and physical description as the Luther Coburn pictured in the daily bulletin opened the door, walked into the rear yard and urinated. The man returned to the building before the witness could arrest him.

Sergeant Gaides went back to headquarters to obtain help and heavy equipment. Upon his return to the area he observed a man, John Floyd, who informed him that he had come from the address in question. Floyd tried to gain admittance again, but the person who came to the rear door would not or could not open it.

Sergeant Gaides went to the rear door, knocked on the door and then kicked it in to enter the basement apartment. In the center section of the basement he observed a male and a female both Negro, on a bed. He observed what he believed to be the stock of a shotgun sticking out from under the mattress, pulled it out, and found it to be a sawed-off shotgun. The male was arrested and, in response to questions, said that he did not know of a Luther Coburn and that Coburn was not in the building.

Approximately 10 feet from the back wall of the basement was a lattice partition with an opening similar to a doorway. He looked behind the partition and observed defendant lying on a couch on his right side. This was the same person who earlier had opened the door and who had left the building to urinate.

The witness shined his light on defendant and observed what appeared to be a shotgun lying between his body and his right arm, no more than 2 inches from his person, with the butt of the gun up underneath his right arm and the barrel end pointing toward his feet. Upon examination the witness determined this was merely the stock of a shotgun with no barrel attached. The witness took the shotgun stock and also took a revolver from the floor alongside the couch. He rolled defendant on his back, handcuffed him, and awakened him. In response to the witness' question, defendant said his name was not Luther Coburn. He was advised of his rights, informed that he was under arrest for violation of the "Uniform Act Regulating the Shotgun in the State of Illinois," and told that the police had a murder warrant for him. The witness found a shotgun barrel in another part of the basement that fit the stock in defendant's possession.

At trial the witness identified a sawed-off shotgun, subsequently received in evidence, as the one he recovered from defendant, with the exception that the barrel was not attached at the time the recovery was

made. The parties stipulated that the gun barrel was less than 18 inches long.

## OPINION

Defendant first contends that the State failed to prove the defendant possessed a shotgun with a barrel less than 18 inches. He argues that while the stock was found in his possession it was not a shotgun because there was no barrel attached to it.

Defendant was charged with violating a statute that forbids the knowing possession of "any shotgun with a barrel less than 18 inches in length," section 24—1(a)(7) of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 24—1(a)(7)). The testimony of Sergeant Gaides indicates that only the stock of the shotgun was found lying adjacent to the sleeping defendant; the barrel was discovered "in another location in the basement." Although the two parts were pieced together at trial, the State offered no evidence to show that the barrel they found belonged to the stock; nor was there any testimony the barrel was not designed for the sawed-off shotgun found in another part of the basement at the time of the arrest.

■■■ Although it appears that defendant did possess the stock of a shotgun, this is not prohibited under section 24—1(a)(7) of the Criminal Code. Assuming *arguendo* that the search that led to the discovery of the barrel was legal and that the stock was in defendant's possession, we conclude, absent proof that the barrel and stock were part of the same gun, that the State has failed to prove beyond a reasonable doubt that defendant possessed a shotgun at all, much less a shotgun with a barrel less than 18 inches in length.

The State contends that a weapon that is the subject of an unlawful use of weapons charge need not be shown to be operative; it is sufficient to show that the weapon possessed the outward appearance and characteristics of a shotgun. (*People v. Halley*, 131 Ill.App.2d 1070, 268 N.E.2d 449.) We believe, however, that the barrel of a shotgun does more than render the weapon operative. The barrel is an integral part of the weapon; without it, the object found lying next to the defendant lacks the essential characteristics of a shotgun and is merely the stock of a shotgun, which is not prohibited.

In view of our finding that the State failed to prove defendant guilty beyond a reasonable doubt, we need not consider defendant's other contentions. Defendant's conviction is reversed.

Reversed.

DRUCKER and SULLIVAN, JJ., concur.