(744 P.2d 519)

No. 59,802█

STATE OF KANSAS, *Appellee*, v. KEITH F. KULPER, *Appellant*.

█ Opinion filed August 6, 1987. █

*Jessica R. Kunen*, deputy appellate defender, and *Benjamin C. Wood*, chief appellate defender, for appellant.

*Wendell J. Barker*, county attorney, and *Robert T. Stephan*, attorney general, for appellee.

Before ABBOTT, C.J., BRAZIL, J., and MICHAEL A. BARBARA, District Judge Retired, assigned.

*Per Curiam*: Keith F. Kulper appeals his conviction for unlawful use of weapons, K.S.A. 1986 Supp. 21-4201(1)(g), a class E felony. He contends that: (1) evidence of three pieces of a disassembled shotgun, under the facts of this case, was insufficient to support his conviction; (2) the trial court erred in refusing to give his requested instruction defining "possession"; (3) because his car was illegally seized, the subsequent search of the car and his statement should be excluded; and (4) the trial court abused its discretion by sentencing him (a) under the Habitual Criminal Act, (b) without considering the factors listed in K.S.A. 1986 Supp. 21-4601 and K.S.A. 21-4606, and (c) without granting probation. We affirm.

On April 23, 1986, defendant Kulper's car and a propane truck collided in or near Ottawa, Kansas. At the time of the collision a friend, Connie Hake, was driving, her husband Chuck was in the right front seat, and Kulper was trying to sleep in the back seat. A highway patrol trooper and a county sheriff's captain investi-

gated the accident. Kulper's friend and her husband were taken from the scene by ambulance. Kulper's car was not driveable after the accident and eventually the captain called a tow truck to remove it from the scene. Kulper and the officers apparently went to the hospital, and the trooper asked both Kulper and the driver for insurance information for the car. Both thought it was in the glove compartment and agreed they would prefer to have an officer go search the glove compartment for the information rather than receive a ticket for driving without insurance.

The captain went to the lot at the wrecker service that had towed the car and looked in the glove compartment. Along with the title and other papers, he found the forearm piece and the modified stock of a shotgun. The stock had been cut off to leave a short handle that was wrapped with electrical tape. He knew from past experience that such a stock was often used for a sawed-off shotgun. As he was leaving the car, he looked in the trunk which was partly open because of damage from the wreck and saw a shotgun barrel that was clearly less than eighteen inches long. The captain put the pieces together to see if they fit and they did. He seized the pieces and returned to the hospital where Kulper and his two friends were. Kulper eventually admitted the gun was his.

For his first issue, Kulper asks us to rule as a matter of law that one who owns a sawed-off shotgun which is found disassembled in his car, with two parts in the glove compartment and one in the trunk, cannot have possessed a shotgun with an illegally short barrel within the meaning of K.S.A. 1986 Supp. 21-4201(1)(g). The statute provides in pertinent part:

"(1) Unlawful use of weapons is knowingly:

. . . .

"(g) selling, manufacturing, purchasing, possessing or carrying a shotgun with a barrel less than 18 inches in length or any other firearm designed to discharge or capable of discharging automatically more than once by a single function of the trigger."

Kulper first contends the phrase "carrying a shotgun with a barrel less than 18 inches in length" somehow implies that the gun must be completely assembled. However the second portion of the subsection, which outlaws machine guns, indicates that the legislature was not concerned here merely with immediately

functional guns but also those which are either designed to function or are otherwise capable of functioning in the prohibited manner. Thus the language used, to the extent it can be said to address the question at all, tends more to support the conclusion that the legislature intended to ban the possession of the parts of these guns whether assembled or not.

Kulper also tries to draw support for his claim from the one exemption the legislature did provide in 21-4201(4):

"Subsections (1)(a), (f) and (g) shall not apply to any person who . . . possesses or carries a firearm, device or attachment which has been rendered unserviceable by steel weld in the chamber and marriage weld of the barrel to the receiver and which has been registered in the national firearms registration and transfer record . . . in the name of such person."

He cites a supreme court case which held: "A firearm is consistently defined in terms of its design or capacity to propel a projectile by force of an explosion, gas, or other combustion." *State v. Davis*, 227 Kan. 174, 177, 605 P.2d 572 (1980). Kulper then asserts, in effect, that a disassembled gun is not a firearm because it cannot propel a projectile, and concludes the exemption applies only to assembled guns. His claim is not persuasive. The one defense the legislature included in the statute involved what are probably irreversible changes to a gun which make it permanently incapable of propelling a projectile. At the least, this indicates the legislature did not intend that mere disassembly would be a defense where reassembly is apparently very simple.

No Kansas case has considered the claim Kulper is making in a prosecution under K.S.A. 1986 Supp. 21-4201, but one case does support a conclusion that it was for the jury to decide whether the three pieces constituted a shotgun under the statute. In *State v. McCambry*, 225 Kan. 803, 803-04, 594 P.2d 222 (1979), the court held the jury must decide whether a sawed-off shotgun that lay in two pieces at the defendant's feet during a robbery until he picked it up as he left the scene constituted a dangerous weapon so that the robbery was aggravated under K.S.A. 21-3427.

The court has also considered what is required for "possession" under a statute closely related to 21-4201, and Kulper cites the following definition to support his claim. K.S.A. 21-4204 provides in part:

"(1) Unlawful possession of a firearm is:

"(a) Possession of any firearm by an habitual drunkard or narcotics addict; or

"(b) Possession of a firearm with a barrel less than twelve (12) inches long by a person who, within five (5) years preceding such violation has been convicted of a felony under the laws of Kansas or any other jurisdiction or has been released from imprisonment for a felony."

In *State v. Jones*, 229 Kan. 618, 620, 629 P.2d 181 (1981), the court said:

"Our court has consistently emphasized that the possession of a firearm prohibited by K.S.A. 21-4204 is not the innocent handling of the weapon but a willful or knowing possession of a firearm with the intent to control the use and management thereof. *State v. Neal*, 215 Kan. 737, Syl. ¶ 1, 529 P.2d 114 (1974)."

Kulper seizes upon the word "use" in the definition given in *State v. Neal* and seeks to stretch it to mean immediate use to fire projectiles. In his view, by defining "possession" the court limited it to cover only immediately fully functional firearms. However, by dismantling a gun, one is "control[ling] the use and management thereof." *State v. Jones*, 229 Kan. at 620.

Finally, Kulper cites several out-of-state cases to support his claim. In *People v. Coburn*, 25 Ill. App. 3d 542, 545, 323 N.E.2d 559 (1975), the court held that the State had failed to prove beyond a reasonable doubt that the defendant possessed a shotgun with a barrel less than eighteen inches long. The police found Coburn sleeping in a basement apartment with the stock of a shotgun laying beside him, found a short barrel in another part of the basement, and found another man sleeping with a complete sawed-off shotgun under his mattress. 25 Ill. App. 3d at 544. In reversing the conviction, the court noted that, although the short barrel fit the stock, the State had offered no evidence to show the barrel belonged to the stock found beside the defendant or that it was not designed for the other shotgun found in the basement. Without the barrel, the court said, "the object found lying next to the defendant lacks the essential characteristics of a shotgun and is merely the stock of a shotgun, which is not prohibited." 25 Ill. App. 3d at 545. Even accepting this decision as correct, our case is distinguishable on several points: (1) Kulper admitted the gun was his; (2) all the pieces of the gun were found in his car; and (3) no other gun the pieces might fit was found in the car or in the possession of the other people in

the car. In a case decided by a different Illinois appellate court, the court held that the inclusion in the Illinois statute of one exemption involving guns in a nonfunctioning state prevented it from reading another for disassembled shotguns into the statute. *People v. Theobald*, 43 Ill. App. 3d 897, 898-99, 356 N.E.2d 1258 (1976). The court distinguished *Coburn* on the ground Theobald "was found in possession of an entire sawed-off shotgun albeit disassembled." 43 Ill. App. 3d at 900. *Williams v. State*, 400 So. 2d 427 (Ala. Crim. App. 1981), is not helpful here because Williams possessed only two pieces of a shotgun while another person had sole possession of the barrel and the court concluded that in any event the weapon in question was not a "pistol" under the applicable statute. 400 So. 2d at 429.

Furthermore, other courts have held that it is not a defense to a charge of possession of an illegal weapon that the weapon was disassembled when found by the police. *E.g., People v. Tallmadge*, 103 Cal. App. 3d 980, 987-88, 163 Cal. Rptr. 372 (1980) (machine gun); *Thornton v. State*, 529 S.W.2d 539, 541 (Tex. Crim. App. 1975) (sawed-off shotgun). In *Tallmadge* the court said, "Not to treat this as a crime would permit the criminal to own machine gun parts with impunity, to assemble and use it and then disassemble it to reacquire immunity. Surely that was not the legislative intent." 103 Cal. App. 3d at 988.

Next Kulper argues that the trial court erred when it refused his request to instruct the jury that "[p]ossession means having custody of a firearm with the intent to control its management and use." This suggested instruction is drawn from PIK Crim. 2d 64.06 which is the instruction based on K.S.A. 21-4204. The court gave the following pertinent instructions:

"No. 8

"The defendant is charged with the crime of unlawful use of weapons. The defendant pleads not guilty.

"To establish this charge each of the following claims must be proved:

"1. That the defendant knowingly possessed a shotgun with a barrel less than 18 inches in length; and

"2. That this act occurred on or about the 23rd day of April, 1986, in Franklin County, Kansas.

"No. 9

"Possession is defined as having control over a place or thing with knowledge of and the intent to have such control."

Kulper raises several complaints about the possession instruction.

Kulper first argues that the words "firearm," "management," and "use" are essential to the instructions in this case. He argues that the words "place" and "thing" permitted the jury to convict upon finding that Kulper possessed only a part of a gun. However, the elements instruction clearly states that the jury must find Kulper possessed a "shotgun," not just any "thing." Kulper's trial counsel obviously felt the question of the effect of the disassembled state of the parts was still before the jury under the court's instructions; he told the jurors they had to decide, "Was this weapon a shotgun when it's in three different pieces in two different areas of the car, and one area was totally inaccessible to a passenger in the car?" The jurors may simply have accepted the prosecutor's assertion that the claim the parts were somehow not a shotgun was "absurd." Kulper also claims the omission of the words "management" and "use" prevented the jury from considering whether he had an intent to *use* or *manage* a weapon. However, the more important word in both definitions of "possession" is "control." The question is not whether Kulper intended to use or manage the shotgun but whether he intended to control it. This the jury was instructed to decide.

Kulper's remaining arguments under this issue are not clear, but seem to amount to a claim that firearm, management, and use are somehow essential elements of the crime of knowing possession of a sawed-off shotgun. This is simply not true. The statute requires knowing possession of a shotgun with a barrel less than eighteen inches long. K.S.A. 1986 Supp. 21-4201(1)(g). The elements instruction the court gave follows PIK Crim. 2d 64.01.

Finally, in *State v. Adams*, 223 Kan. 254, 256, 573 P.2d 604 (1977), the court held that the definition of "possession" contained in PIK Crim. 2d 53.00 was a proper instruction in a prosecution under K.S.A. 21-4204. That is the possession instruction the court gave here.

On appeal Kulper contends that his car was illegally seized. However, the only search and seizure issue Kulper raised before the trial court was whether his car was illegally searched. Con-

sequently, we will not consider the seizure issue. "Where constitutional grounds for a reversal of a conviction are first raised on appeal, they are not properly before the appellate court for review." *State v. O'Neal*, 238 Kan. 183, 187, 708 P.2d 206 (1985).

Likewise, since Kulper's remaining claims relating to suppression of evidence depend upon the illegal seizure issue, they also will not be considered.

Finally, Kulper claims the court abused its discretion when imposing sentence. Though he has failed to note it, the court did impose the maximum imprisonment possible for a class E felony and second felony conviction. K.S.A. 1986 Supp. 21-4501(e) and -4504(a). The presentence investigation report states that Kulper was convicted of two aggravated robberies and one attempted aggravated robbery and that he was in prison from 1976 to 1979. It also states:

"The seriousness of the offense is increased due to his record of aggravated offenses. The purpose of the weapon in the car is unknown, but the defendant had to have known of the prohibition of his possession of a firearm and with his record of aggravated offenses how such a situation could be perceived."

The report recommended placement with the Secretary of Corrections and evaluation by the State Reception and Diagnostic Center (SRDC). The court sentenced Kulper to the custody of the Secretary of Corrections for a term of not less than two nor more than ten years and ordered the payment of costs. It then denied probation. On motion for modification, after receiving the SRDC report which recommended probation, the court said:

"Well, I think this man had served a term for a violent crime or a life-threatening crime, armed robbery, and hadn't been out too long apparently when he got involved in this incident. I read the report from the Kansas Department of Corrections and I'm of the opinion that the application for modification should be denied."

"[A] sentence imposed which is within the statutory limits will not be disturbed on appeal, provided it is within the realm of discretion on the part of the trial court and not a result of partiality or prejudice." *State v. Hamilton*, 240 Kan. 539, 540, 731 P.2d 863 (1987). Furthermore, "a trial court's failure to make a detailed statement of the factors considered by the court in imposing sentence does not necessarily, in and of itself, constitute an abuse of discretion." *State v. Jennings*, 240 Kan. 377, 381,

729 P.2d 454 (1986). About the most the record discloses in this regard is that the judge apparently did not realize Kulper had been out of prison from 1979 until the car wreck occurred in 1986, at least five years, without being convicted for other crimes.

We find no abuse of discretion.

Affirmed.