NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250647-U

NO. 4-25-0647

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 7, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Tazewell County |
| BRIAN R. CHILDERS, | ) | No. 24CF197 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Christopher R. Doscotch, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Lannerd and Vancil concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The appellate court affirmed, finding (1) the armed violence statute is not unconstitutionally vague on its face, (2) defendant's as-applied constitutional challenges to the armed violence statute are premature, (3) defendant failed to show trial counsel rendered ineffective assistance regarding defendant's jury waiver and proceeding to trial without a motion to substitute the trial court judge, (4) defendant forfeited his argument counsel rendered ineffective assistance by failing to raise sentencing issues in a posttrial motion, and (5) the record is inadequate to review defendant's remaining claims of ineffective assistance of counsel on direct appeal.

¶ 2     In March 2024, defendant, Brian R. Childers, was charged with armed violence (720 ILCS 5/33A-2(a) (West 2024)) and two counts of unlawful possession of methamphetamine (720 ILCS 646/60(a) (West 2024)). During proceedings regarding the State's motion to deny pretrial release, the trial court heard evidence concerning a related case in Peoria County in which defendant was charged with aggravated assault, a Class 4 felony. The court denied defendant pretrial release.

¶ 3    Before trial, the State offered defendant a plea bargain conditioned on defendant not seeking laboratory testing of a sample of alleged methamphetamine. The plea bargain would have removed the armed violence charge and likely significantly reduced defendant's potential sentence. However, instead of accepting the offer, defense counsel filed a motion seeking laboratory testing of the sample, stating defendant would not plead guilty without the sample being tested. The State revoked the plea offer, and defendant waived a jury trial. The trial court found defendant guilty and sentenced him to an aggregate term of 21 years' imprisonment.

¶ 4    On appeal, defendant argues (1) the armed violence statute is unconstitutionally vague, both facially and as applied to him; (2) the armed violence statute violates the second amendment of the United States Constitution (U.S. Const., amend. II) as applied to him; and (3) trial counsel rendered ineffective assistance by failing to (a) timely apprise him of the overwhelming evidence against him and filing a futile motion for laboratory testing before the plea offer was revoked, (b) ensure the validity of his jury waiver, where counsel allowed him to proceed to a bench trial without seeking to substitute the trial court judge and failed to raise the issue in a posttrial motion, (c) seek fingerprint evidence from a bag, (d) secure the testimony of a witness, (e) raise various sentencing issues in a posttrial motion, and (f) raise the issues of the constitutionality of the armed violence statute.

¶ 5    For the reasons that follow, we affirm.

¶ 6                              I. BACKGROUND

¶ 7    On March 18, 2024, defendant engaged in criminal conduct in two counties: Peoria County and Tazewell County. In Peoria County, defendant was charged on March 19, 2024, with aggravated assault, a Class 4 felony. The State alleged defendant displayed a handgun, placing a police officer, Terravis Ward, in reasonable apprehension of receiving a battery. Police officers

arrested defendant in Tazewell County at a hotel and casino. The officers found contraband and a handgun during a search incident to arrest, and defendant was ultimately charged with Class X felony armed violence in that he possessed less than five grams of methamphetamine while armed with a handgun (count I); Class 3 felony possession of under five grams of methamphetamine (count II), and Class 1 felony possession of more than five but less than 100 grams of methamphetamine (count III).

¶ 8      In the Peoria County case, the State sought pretrial detention of defendant. At the hearing, the State proffered Ward attempted to conduct a traffic stop of the truck defendant was driving. After Ward activated his lights and siren, the truck sped away. A short time later, Ward saw the truck pull into a parking lot. Ward approached defendant, and defendant pointed a handgun at Ward, returned to his truck, and drove away. Officers later spoke with Leah Sloan, who had been in the truck with defendant. Officers ultimately arrested defendant at a hotel in Tazewell County, where contraband and a handgun were found. Defendant admitted pointing the gun at Ward. A pretrial investigation report (PSI) indicated defendant scored a 2 out of 14 on a pretrial risk assessment, indicating he was suitable for pretrial supervision. The trial court denied the State's petition for pretrial detention.

¶ 9      On March 22, 2024, defendant was charged in the Tazewell County case. The State filed a petition to deny pretrial release. Appointed counsel, public defender Luke Taylor, filed a motion to dismiss the petition on collateral estoppel grounds. Defendant asserted because the Peoria County trial court had considered the same issues and ruled pretrial detention was not appropriate, the State could not seek his detention on the same issues in Tazewell County.

¶ 10      The trial court held a hearing on the motion to dismiss the State's petition and the issue of pretrial detention. The court denied the motion to dismiss, noting the charged offenses

were different in the two cases.

¶ 11　　　　On the matter of the State's petition to deny defendant pretrial release, over defense counsel's standing objection regarding the relevance of the Peoria County case, the State offered testimony and about 30 seconds of body camera footage from Ward. Ward testified he was on patrol at 5 a.m. on March 18, 2024, when he observed a truck parked in front of a residence in Peoria that "seemed like a flop house," in which illegal narcotics activity occurred. When the truck left the residence, Ward followed it. The driver of the truck failed to activate a turn signal and nearly caused an accident. Ward activated his overhead lights and siren, and the truck "[t]ook off at a high rate of speed." Ward then turned off his lights and sirens and stopped his pursuit. Ward continued to patrol the area and located the truck in a parking lot within approximately one minute. Ward contacted dispatch and then reactivated his lights. Ward exited his squad car and approached the driver's side of the truck. Ward asked defendant to step out of the vehicle, but defendant did not comply. Ward then unholstered his sidearm and pointed it in defendant's direction. Defendant then produced a small compact handgun and pointed it directly at Ward. Ward feared for his life, retreated to the passenger-side tailgate of the truck, and held his firearm directly at the driver's side. Defendant then drove away. Ward returned to the residence and spoke to Sloan. Sloan identified defendant as the driver of the truck. She said she had been riding with him and asked him to drop her off, as he was acting erratic, appeared to be intoxicated, speeding, and driving recklessly.

¶ 12　　　　The State next made a proffer that, when defendant pulled the gun on Ward, defendant said, "Don't f*** with me, Officer." Defendant was found midmorning outside a hotel and casino in Tazewell County. Because officers knew defendant had a gun, they drew their weapons. As officers were ordering him to the ground, defendant stood there for several minutes,

"quietly drinking his coffee." The State emphasized defendant was from Alabama and not an Illinois resident.

¶ 13        Defense counsel provided evidence supporting pretrial release and argued the Peoria County trial court's decision to release defendant pending trial was binding in the Tazewell County case because both cases arose out of the same common nucleus of operative facts and the prosecutors in each case had access to all of those same facts in litigating the issue. To support that theory, defense counsel offered evidence that prosecutors in both cases had access to the same information, consisting of the PSI filed in each county, police reports, the State's petition to deny pretrial release filed in the Peoria County case, the transcript of the detention hearing in that case, and the conditions of pretrial release entered in that case. The trial court also reviewed an affidavit of probable cause.

¶ 14        The trial court granted the State's petition. The court found the State had proved by clear and convincing evidence the proof was evident and presumption great defendant committed the qualifying offense. When the court referenced the police reports and commented on the facts in them, defense counsel stated he had offered those as exhibits at the previous hearing not for the truth of the matters asserted but for the limited purpose of showing the prosecutors in both cases had access to the same information when seeking defendant's pretrial detention. The court noted defendant "had the gun on him previously in Peoria and in those ensuing hours didn't find any reason to not have that gun on him." Citing the affidavit of probable cause, the court also noted the gun found on defendant at the hotel was the same gun he had pulled on Ward and, based on what Sloan had told the police, defendant "always has a pistol on him." The court concluded defendant obviously had access to weapons and posed a threat to the safety of the police. The court stated, "If you pull out a gun on the police, who else also would you pull out a gun [on]?" The

court later repeated that consideration and stated defendant might pull a gun on anyone he knew was armed.

¶ 15        The trial court found Ward's testimony credible. The court further found defendant made remarks in a PSI that negatively impacted his credibility in a significant manner, including a denial he had any substance abuse issues. The court found defendant had possessed drugs, was "driving around recklessly through Peoria," and was reported to have not been "of his right mind." The court noted defendant had at least one prior conviction for driving under the influence of alcohol in 2000 and found that showed defendant had a significant history of alcohol and substance abuse. The court found defendant's refusal to admit his drug problem increased the threat he posed to the public and he posed a real and present threat to the safety of the community and the police. The court incorrectly stated defendant possessed 18 grams of methamphetamine based on an erroneous quantity listed from a test an officer reported conducting in one of the police reports, and it noted that quantity was not normally "walking around meth or personal possession meth." The police report suggested only the larger amount of the substance found was tested by the officer.

¶ 16        The trial court also noted defendant's lack of ties to Illinois, as opposed to Alabama, as well as his limited financial resources and its uncertainty regarding his living situation and employment status. When counsel argued defendant had provided a local home address and reported living there with his cousin, the court stated it had considered defendant was from another state and had been in Illinois for only a couple of months.

¶ 17        After the hearing, the trial court also entered a written detention order. The court found defendant posed a real and present threat and checked the following boxes to support its finding: "Violent nature of the offense"; "Alleged use of a weapon"; "Identity of those to whom Defendant poses a threat, and the nature of the threat"; "Defendant being known to possess

weapons, or have access to weapons"; and "Defendant's history of violent/abusive behavior." For the finding the threat of defendant's release cannot be mitigated by any release condition or combination of conditions, the court added the following: "Articulable facts of the case—reasons marked above and for reasons stated in the record."

¶ 18 Defendant appealed, arguing the trial court abused its discretion in granting the State's petition to deny him pretrial release and the court should have dismissed the State's petition under the doctrine of collateral estoppel. We affirmed. *People v. Childers*, 2024 IL App (4th) 240664-U, ¶ 33.

¶ 19 While the appeal was pending, defendant obtained privately retained counsel. In August 2024, defendant sent a letter to the trial court asking it to consider the charges and issues in the Tazewell County case separately from those in the Peoria County case and reconsider its decision to detain him pending trial. No motion was filed, and defendant's then counsel, Robert Kerr, moved to withdraw from the case. In the motion, Kerr stated defendant had stated he wished to discharge Kerr. Kerr stated, in part, he had reviewed with defendant an offer from the State to accept defendant's plea to Class 3 felony unlawful possession of methamphetamine (count II) and a yet to be charged Class 4 felony offense. Kerr stated he had discussed the sentencing provisions associated with a finding of guilt after trial and a finding of guilt of armed violence (count I).

¶ 20 On September 26, 2024, a hearing was held on the matter. Kerr asked the trial court to admonish defendant regarding the State's offer. Kerr explained the offer, and the court and the parties discussed the applicable sentencing range for the armed violence charge, noting defendant would face 17 to 35 years in prison if convicted of counts I and II and "something more like" 19 to 45 years in prison if convicted of counts I and III. The parties mistakenly stated the sentence imposed for armed violence would be served at 85% and the drug offenses at 50%, but the State

later corrected the record on that account.

¶ 21    The following colloquy occurred regarding the plea offer and Kerr's motion to withdraw:

"THE COURT: Okay. And I guess—and the point Mr. Kerr is making here, [defendant], is that you understand here you're withdrawing representation—you're asking this attorney to no longer represent you, and in doing this, that you understand the potentials you face especially in light I guess—I don't know all of the details, but obviously without Count 1 being involved, it's much less than the maximum potential penalty here. Part of it would be mandatory consecutive and non-probationable; correct?

[DEFENDANT]: Yes, [Y]our Honor. I no longer need Mr. Kerr to represent me.

THE COURT: Okay. And do you understand what we just said regarding sentencing?

[DEFENDANT]: I *** do understand some of that. Yes, sir.

THE COURT: All right. Well, when you use the word 'some', then that always makes me say is there something you don't understand regarding that?

[DEFENDANT]: Well, yes, sir, but I think just more for the trial stuff.

THE COURT: Right. And Mr. Kerr has explained those penalty ranges to you; is that correct?

[DEFENDANT]: Yes, sir.

THE COURT: In going over the plea agreement and you understand that—again, it's your decision whether you accept a plea or not.

I always encourage people to listen to their attorney's advice, but that is your decision so—and it's your decision to terminate your representation of Mr. Kerr; is that correct?

[DEFENDANT]: Yes, sir. I no longer have the funds to pay him any more money from this point.

MR. KERR: Your Honor, I can assure the Court that this is not simply an issue related to [defendant's] ability to pay. Our agreement is not conditioned on [defendant's] pretrial release.

THE COURT: Okay.

MR. KERR: We have reached what I would characterize as irreconcilable differences with respect to strategy in this case. I have not been visiting with [defendant] with the frequency that I have with an intent or desire to withdraw from the case prior to litigation, but again, Judge, my agreement for services is not conditioned on his pretrial release. Judge, I was advised on Tuesday that I am no longer wanted as an attorney.

THE COURT: All right. So, [defendant], it's just not a pay issue. You don't want him to be your attorney. Irreconcilable differences have occurred between the two of you?

[DEFENDANT]: Yes, [Y]our Honor."

The court allowed Kerr to withdraw.

¶ 22        In October 2024, public defender James Bradshaw appeared in the case. An order for discovery had been entered in May 2024. On October 10, 2024, the State told the trial court it had provided written discovery to Bradshaw. On October 17, 2024, Bradshaw told the court he

received discovery and there were "some unusual elements" to it, including testing of the drugs. On November 21, 2024, Bradshaw told the court he had assured defendant he would review video discovery with him before the next court date. On November 26, 2024, the court entered an order stating Bradshaw and the State had redacted discovery by agreement and agreed defendant could have a copy.

¶ 23    On December 10, 2024, Bradshaw filed a motion for laboratory testing of a sample of the purported methamphetamine. Bradshaw noted the suspected methamphetamine was sent to the crime lab, but only the sample found in the hotel room had been tested. The sample found on defendant's person had not been tested. Bradshaw stated that, under crime lab policy, the second sample would be tested if the matter proceeded to trial. He then stated a plea offer had been made, which was conditioned on the matter not being set for trial, but defendant would not consider such an offer without knowing if the substance found on him was illegal. There is no order disposing of that motion in the record, but the record shows the second sample was sent twice to the laboratory for testing.

¶ 24    On December 23, 2024, defendant signed a jury waiver, and the case was set for a bench trial. Defendant stated he understood the decision was his to make and had discussed the decision with Bradshaw. The trial court admonished defendant and found his jury waiver was knowing and voluntary.

¶ 25    At a status hearing on January 23, 2025, defense counsel said he planned to file a motion contesting defendant's pretrial detention based on new circumstances. At the end of the hearing, the State said, "The State did re-extend an offer today, and at this time that offer would be revoked."

¶ 26    On March 5, 2025, defendant wrote a letter to the trial court, stating, in part, that he

objected to new evidence being entered "without going through proper procedure and being presented to me." Defendant wrote Bradshaw showed him body camera footage on February 5, 2025, and "that would seem to be normal but I had already decided to go to trial." Defendant also stated he did not receive any discovery until November 26, 2024. Defendant stated Bradshaw told him the second sample had tested positive for methamphetamine, but defendant had not been provided with the lab report. Defendant asserted he was given discovery documents stating a sample sent to the crime lab was less than 0.1 grams and not analyzed. Defendant stated he asked counsel to file various pretrial motions, including a motion for an Illinois Supreme Court Rule 402 (eff. July 1, 2012) conference. He also wrote, "How can anyone be expected to make a [decision] in their case if they are denied their right to any and all information in said case. I might have had different [decisions] if I was shown everything in a timely manner."

¶ 27 On March 17, 2025, the trial court acknowledged it received the letter and stated it "did read through it generally." The court then told defendant, "I didn't highlight and take a bunch of notes because you're not supposed to write to me directly or get anything; okay?" The court told defendant it did not want to be unduly prejudiced by anything defendant might write. The following colloquy then occurred:

"THE COURT: And believe me, people have put stuff in there that's not helping their situation; okay? And I want to know—and it could hurt you with me, and then I have to, we know human nature, take it out of my brain, but I'd rather not have to do that; okay?

[DEFENDANT]: Yes, sir.

THE COURT: So that's just the nature of being human.

[DEFENDANT]: Yes, sir.

- 11 -

THE COURT: I mean when you hear things, you can't unhear them. You've got to then try to make sure you put it off to the side, but it's better that I don't even have to deal with that—

[DEFENDANT]: Yes, sir."

Bradshaw then told the court,

"I think [defendant] was just complaining that it took several months to get it, and the other thing—the heart of this complaint is that an offer was made in this case without having the lab result on the methamphetamine that is the basis of the armed violence count.

The State took the position that they weren't going to test, that they were gonna oppose any request to test it, and if there was such a request, they would pull that offer.

And so [defendant's] position, and I get it, is that that seems unfair. I don't—the research—I've said it may be unfair, but it's not illegal for the State to take that sort of position."

The court stated defendant's previous counsel "put that—because it's not a normal issue so I know that was an issue with him, put that on the record at the time that he had withdrawn in this case."

¶ 28        On March 18, 2025, the trial was continued at the State's request. Bradshaw requested defendant be granted pretrial release, arguing defendant had previously lived at the same address since February 2024. The trial court disagreed, stating the issue was not new and defendant's detention was not based just on flight concerns.

¶ 29        On April 7, 2025, the trial court held the bench trial. At the start of trial, the court asked about the status of any offers, and the State told the court the offer had been revoked. The

State told the court the offer was for five years' incarceration on the Class 3 methamphetamine charge, plus a Class 4 felony charge would be added and the other charges dismissed.

¶ 30    The State presented testimony and body camera footage from Peoria police officers who arrested and searched defendant. The officers testified an incident had occurred earlier that morning which caused them to look for defendant at the hotel Sloan had directed them to. When defendant was seen standing outside in front of the hotel, several officers in plainclothes stopped their unmarked vehicles in front of defendant and ordered him to the ground at gunpoint.

¶ 31    When officers searched defendant, they found $2,400 in cash, a white lip balm tube, a small metal shovel in his pockets, and a gun in a holster in the back of his waistband. The lip balm tube held a plastic bag containing a small amount of a white substance that was later determined to be 0.077 grams of methamphetamine. An officer identified the metal shovel as drug paraphernalia.

¶ 32    Officers searched defendant's hotel room and found a duffel bag containing men's clothing and a toiletry bag belonging to defendant. Police also found a garbage bag containing women's clothing belonging to Sloan. Inside the toiletry bag, police found a second plastic bag containing a white substance that was later determined to be 8.046 grams of methamphetamine.

¶ 33    Defendant testified Sloan was a "meth user" and had left the lip balm container and metal shovel in his hotel bathroom. Defendant stated he believed he had seen Sloan put an empty bag inside the lip balm tube. Defendant testified he put the items in his pocket with the intention of throwing them away in the hotel lobby because he did not want any paraphernalia in his room. Defendant acknowledged the duffel and toiletry bags were his but said he did not know drugs were inside of them and he believed Sloan put the drugs there. He stated Sloan had last been in the room on March 18, 2024, and she had left to pick up more clothes.

¶ 34    Sloan did not testify. Before trial, the State subpoenaed Sloan but could not obtain service. The record does not show whether Bradshaw tried to secure her testimony.

¶ 35    In his closing argument, Bradshaw erroneously referred to defendant by his deceased father's first name. Bradshaw conceded defendant possessed a handgun at the time of his arrest and argued that whether he committed armed violence thus turned on whether he possessed drugs at the same time. Bradshaw argued that there was no evidence defendant had any drug history, such as prior arrests, and it was reasonable to believe his uncontroverted testimony that Sloan brought the drugs to the hotel room and left them there.

¶ 36    The trial court found defendant guilty. The court stated it assessed "appropriate credibility" and found the officers' testimony was corroborated by the video evidence. The court noted methamphetamine was found in defendant's toiletry bag, and defendant acknowledged he picked up the lip balm tube because he was concerned about it, showing an awareness of what was inside of it. The court found defendant's story did not make sense and stated it based its determination on common sense and experience.

¶ 37    Defense counsel filed a posttrial motion alleging the State had failed to prove defendant guilty beyond a reasonable doubt and the verdict was against the manifest weight of the evidence. The trial court denied the motion.

¶ 38    Defendant filed a *pro se* posttrial motion, alleging counsel rendered ineffective assistance of counsel by failing to file any pretrial motions and by forgetting defendant's name during his closing argument.

¶ 39    The trial court conducted a preliminary inquiry pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984). Defendant argued, in part, his attorneys, including Bradshaw, had refused to file motions for a new pretrial detention hearing and to bar evidence from the Peoria County case

from being introduced at trial. Bradshaw told the court it had not been necessary to file a motion to bar evidence from the Peoria County case because the State had agreed not to introduce such evidence, defendant had waived his right to a jury trial, and the court was already aware of the events alleged to have transpired in the Peoria County case. Bradshaw stated his use of the wrong name in his closing argument was an inadvertent mistake.

¶ 40 The trial court asked whether the transcript of the pretrial detention proceedings was available. Defendant said he had a copy of it in his cell, and Bradshaw stated, "Obviously, I wasn't in the case." The court stated it had an independent recollection of the detention hearing and stated it did not remember anything regarding details from the Peoria County case coming up at trial. The court found defendant's claims lacked merit, particularly because counsel "did not have a lot to work with," given the video evidence in the case.

¶ 41 At sentencing, defendant presented evidence he was eligible for a firearm owner's identification (FOID) card at the time of his arrest. The trial court questioned that assertion, stating the law on that matter was confusing. Defendant also presented other mitigating evidence. The State argued in aggravation that defendant's actions in the Peoria County case showed he posed a danger to the public. The State sought a 25-year sentence.

¶ 42 Bradshaw told the trial court he understood the State's plea offer was conditioned on defendant not setting the case for trial or filing a motion for laboratory testing. However, he argued the State's offer showed it did not believe defendant was a danger to the public. He also argued the State's request for a sentence five times greater than the offer was disingenuous.

¶ 43 The trial court stated the armed violence statute was "unfairly harsh," and it noted defendant had a minimal criminal history, which would normally support imposing the "harsh" minimum prison term of 15 years. However, based on defendant's history of not complying with

law enforcement, the court instead imposed a sentence of 17 years for armed violence and an aggregate prison term of 21 years.

¶ 44        Bradshaw and defendant each filed motions to reconsider the sentence. Neither motion raised an argument the armed violence statute was unconstitutional. The trial court adopted Bradshaw's motion and denied it.

¶ 45        This appeal followed.

¶ 46                                II. ANALYSIS

¶ 47        On appeal, defendant argues (1) the armed violence statute is unconstitutionally vague, both facially and as applied to him; (2) the armed violence statute violates the second amendment of the United States Constitution (U.S. Const., amend. II) as applied to him; and (3) trial counsel rendered ineffective assistance by failing to (a) timely apprise him of the overwhelming evidence against him and filing a futile motion for laboratory testing before the plea offer was revoked, (b) ensure the validity of his jury waiver, where counsel allowed him to proceed to a bench trial without seeking to substitute the trial court judge and failed to raise the issue in a posttrial motion, (c) seek fingerprint evidence from the larger bag of methamphetamine, (d) secure Sloan's testimony, (e) raise various sentencing issues in a posttrial motion, and (f) raise the issues of the constitutionality of the armed violence statute. Defendant also asserts Bradshaw's defense of the case was "weak."

¶ 48                        A. Constitutional Challenges

¶ 49        On appeal, defendant argues for the first time the armed violence statute is (1) unconstitutionally vague, both facially and as applied to him, and (2) unconstitutional as applied under the second amendment of the United States Constitution (*id.*) under the recently articulated framework for analyzing second amendment challenges in *New York State Rifle &*

*Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022).

¶ 50        Constitutional challenges carry the heavy burden of successfully rebutting a strong judicial presumption that statutes are constitutional. *People v. Patterson*, 2014 IL 115102, ¶ 90. "That presumption applies with equal force to legislative enactments that declare and define conduct constituting a crime and determine the penalties imposed for such conduct." *People v. Rizzo*, 2016 IL 118599, ¶ 23. "To overcome this presumption, the party challenging the statute must clearly establish that it violates the constitution." *People v. Sharpe*, 216 Ill. 2d 481, 487 (2005). A party raising a facial challenge to a statute faces a particularly heavy burden because a statute will be deemed facially unconstitutional only if there is no set of circumstances under which the statute would be valid. *People v. Bochenek*, 2021 IL 125889, ¶ 10. Likewise, "[w]hen a statute does not affect first-amendment rights, it will not be declared unconstitutionally vague on its face unless it is incapable of any valid application—that is, unless under no set of circumstances would the statute be valid." *People v. Winningham*, 391 Ill. App. 3d 476, 481 (2009) (citing *People v. Izzo*, 195 Ill. 2d 109, 112 (2001)).

¶ 51        "Courts have a duty to uphold the constitutionality of a statute whenever reasonably possible, resolving any doubts in favor of the statute's validity." *Rizzo*, 2016 IL 118599, ¶ 23. "The determination of whether a statute is constitutional is a question of law to be reviewed *de novo*." *People v. Relerford*, 2017 IL 121094, ¶ 30.

¶ 52        The armed violence statute provides, "A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law." 720 ILCS 5/33A-2(a) (West 2024).

¶ 53                                    1. *Vagueness Challenge*

¶ 54        Defendant first argues the armed violence statute is unconstitutionally vague on its

face because the term "commits any felony" in the statute is unclear concerning its application to "ongoing, passive possession of contraband." As an example, defendant argues the possession of a stolen car on the property of a gun owner would result in multiple crimes based on a new crime occurring "every moment of every day" the vehicle remained on the property. He also suggests the same would apply to a person driving while having a suspended license and a gun in the vehicle. Defendant also argues the statute failed to include a nexus between being armed and the predicate felony.

¶ 55        Defendant next argues the armed violence statute is unconstitutionally vague as applied to him because he possessed a "negligible" or "minute" amount of methamphetamine while otherwise legally carrying a firearm for purposes of self-defense. Defendant notes his home state of Alabama does not require a permit to possess or carry a handgun. Thus, defendant argues the application of the statute to him did not serve its statutory purpose of deterring the use of firearms in the commission of a felony offense. See *id.* § 33A-1(b)(1).

¶ 56                    a. Defendant's As-Applied Challenge Is Premature

¶ 57        Before addressing the merits of defendant's constitutional challenge, we note defendant did not raise his constitutional arguments in the trial court. However, facial challenges to the constitutionality of a statute are not subject to forfeiture and may be raised at any time. See *In re M.I.*, 2013 IL 113776, ¶ 39 ("[A] challenge to the constitutionality of a statute may be raised at any time."); *People v. Matthews*, 2022 IL App (4th) 210752, ¶ 24 ("Voidness challenges are not subject to forfeiture or any other procedural bar, and such challenges may be raised at any time in any court." (Internal quotation marks omitted.)). Thus, we address defendant's facial constitutional challenge.

¶ 58        However, we find defendant's as-applied challenge is premature. "Because

as-applied constitutional challenges are, by definition, dependent on the specific facts and circumstances of the person raising the challenge, it is paramount that the record be sufficiently developed in terms of those facts and circumstances for purposes of appellate review." *People v. Burns*, 2024 IL App (4th) 230428, ¶ 7 (citing *People v. Harris*, 2018 IL 121932, ¶ 39). "Indeed, a court is incapable of making an as-applied determination of unconstitutionality when no evidentiary hearing has occurred and no findings of fact have been made." *Id.* "Absent an evidentiary record, any finding that a statute is unconstitutional as applied to the challenging party is premature." *Id.*

¶ 59        Here, because defendant did not raise the issue in the trial court, no factual findings were made related to defendant's as-applied claim. While the court heard evidence at trial and at sentencing pertinent to defendant's arguments, evidence was never specifically provided in the context of the constitutionality of the armed violence statute as applied to defendant, and thus, no factual findings were made in that respect.

¶ 60        We recognize other appellate districts have addressed an as-applied constitutional challenge to the armed violence statute for the first time on direct appeal. See *People v. Redmond*, 2025 IL App (1st) 231795, ¶ 43; *People v. Smith*, 2025 IL App (5th) 230656, ¶ 29. However, in those cases, which involved second amendment challenges, as opposed to vagueness challenges, the defendants did not base their arguments on appeal on facts that were undeveloped in the record. In contrast, here, defendant relies in part on arguments suggesting his possession of methamphetamine was negligible or minute, he lawfully possessed and carried the gun because he could do so lawfully in Alabama, he was eligible for a FOID card in Illinois if he became an Illinois resident, and he possessed the gun solely for purposes self-defense. Evidence of the validity of those facts for purposes of determining a constitutional as-applied challenge was not presented to

the trial court or determined in that context.

¶ 61    This court has also routinely applied *Burns* to decline to address as-applied challenges under the second amendment absent a specific evidentiary hearing and findings of fact. See, *e.g.*, *People v. Bones*, 2025 IL App (4th) 241277-U, ¶¶ 22-23; *People v. Stokich*, 2024 IL App (4th) 240192-U, ¶¶ 47-49; *People v. Langston*, 2023 IL App (4th) 230162-U, ¶¶ 21-23. We continue to follow that practice and apply it here to defendant's vagueness challenge. Accordingly, we do not address defendant's as-applied challenge because any finding the armed violence statute is unconstitutionally vague as applied to defendant would be premature.

¶ 62    b. The Armed Violence Statute Is Not Facially Void for Vagueness

¶ 63    A vagueness challenge to a statute "is a due process challenge, examining whether a statute give[s] [a] person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." (Internal quotation marks omitted.) *People v. Greco*, 204 Ill. 2d 400, 415 (2003). The party challenging the statute "must show that the statute did not provide clear notice that the party's conduct was prohibited." *People v. Jihan*, 127 Ill. 2d 379, 385 (1989).

¶ 64    Our supreme court has previously rejected arguments the armed violence statute is unconstitutionally vague, including the argument the statute fails to provide adequate notice of what it proscribes. *People v. Haron*, 85 Ill. 2d 261, 268-70 (1981). In doing so, the supreme court specifically stated, "[T]he armed-violence statute clearly does not require that the presence of a weapon facilitate the predicate offense." *Id.* Instead, the mere fact that a person, while committing a felony, carries on or about his or her person or is otherwise armed with a dangerous weapon is sufficient to come within the language of the statute. *Id.* As such, the statute is not so vague that a person of common intelligence must necessarily guess at its meaning and differ as to its

application. *Id.*

¶ 65 Here, the armed violence statute clearly states, "A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law." 720 ILCS 5/22A-2 (West 2024). There is nothing confusing about the language of the statute. A person of ordinary intelligence in defendant's position would know the armed violence statute prohibited being armed with a gun while committing any felony, in this case that being possession of methamphetamine. That it was a small amount of methamphetamine or that the gun was not necessary for the act of possessing it does not alter the clear meaning of the statute. We also note defendant's hypotheticals envisioning a multitude of potential charges are inapplicable. Defendant must show the statute is incapable of any valid application, and he has not done so. Defendant's case did not involve such a hypothetical multitude of charges, and speculative hypotheticals are irrelevant. Accordingly, defendant's facial vagueness challenge lacks merit.

¶ 66                                     2. *Second Amendment Challenge*

¶ 67 Relying on the United States Supreme Court's decision in *Bruen*, defendant next argues the armed violence statute violates the second amendment to the United States Constitution as applied to him. For the reasons previously discussed regarding defendant's as-applied vagueness challenge, a determination of defendant's second amendment as-applied challenge is also premature. However, we note, while defendant explicitly states he is raising only an as-applied challenge, he at times appears to also suggest the armed violence statute is facially unconstitutional. On that matter, we note numerous Illinois courts addressing facial challenges to criminal statutes under the second amendment and *Bruen* have concluded felons are not included in the class of individuals protected by the second amendment. See *People v. Govea*, 2026 IL App (2d) 250069-U, ¶ 50 (citing cases). Likewise, this court has repeatedly held the same. See *e.g.*,

*Burns*, 2024 IL App (4th) 230428, ¶ 21; *Bones*, 2025 IL App (4th) 241277-U, ¶ 19 (citing cases). Courts have also specifically applied that reasoning to the armed violence statute. See *Redmond*, 2025 IL App (1st) 231795, ¶ 43; *Smith*, 2025 IL App (5th) 230656, ¶ 29.

¶ 68        We see no reason to deviate from those cases. Regardless, we also note there is not a complete absence of case law supporting defendant's as-applied argument. See *Smith*, 2025 IL App (5th) 230656, ¶¶ 37-42 (addressing cases but rejecting the defendant's as-applied challenge). In addition, numerous cases involving the issues defendant raises are currently pending leave to appeal before our supreme court. See *Govea*, 2026 IL App (2d) 250069- U, ¶ 50 (citing cases). In any event, as previously discussed, we do not address the as-applied challenge at this time, given the lack of a specific hearing and findings of fact on the issue.

¶ 69                    B. Ineffective Assistance of Counsel

¶ 70        Defendant next argues his trial counsel rendered ineffective assistance by failing to (1) timely apprise him of the overwhelming evidence against him and filing a futile motion for laboratory testing before the plea offer was revoked, (2) ensure the validity of his jury waiver, where counsel allowed him to proceed to a bench trial without seeking to substitute the trial court judge and failed to raise the issue in a posttrial motion, (3) seek fingerprint evidence of the larger bag of methamphetamine, (4) secure Sloan's testimony, (5) raise various sentencing issues in a posttrial motion, and (6) raise the issues of the constitutionality of the armed violence statute. Defendant also asserts Bradshaw's defense of the case was "weak."

¶ 71        "Claims of ineffective assistance are governed by the standard set forth in [*Strickland v. Washington*, 466 U.S. 668 (1984)]." *People v. Cathey*, 2012 IL 111746, ¶ 23. "To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People*

*v. Petrenko*, 237 Ill. 2d 490, 496 (2010). A defendant must satisfy both prongs of the *Strickland* standard, and the failure to satisfy either prong precludes a finding of ineffective assistance of counsel. *People v. Clendenin*, 238 Ill. 2d 302, 317-18 (2010).

¶ 72 Defendants claiming ineffective assistance of counsel must overcome a strong presumption that counsel's conduct was reasonable and effective. *Strickland*, 466 U.S. at 689. Our supreme court has "made it clear that a reviewing court will be highly deferential to trial counsel on matters of trial strategy, making every effort to evaluate counsel's performance from his perspective at the time, rather than through the lens of hindsight." *People v. Perry*, 224 Ill. 2d 312, 344 (2007).

¶ 73 When addressing a claim of ineffective assistance of counsel, appellate courts first consider whether the defendant has established a clear or obvious error. Absent a clear or obvious error, a theory of ineffective assistance does not afford the defendant any relief. *People v. Gilker*, 2023 IL App (4th) 220914, ¶ 78.

¶ 74 1. *Forfeiture of Failure to Raise Sentencing Issues in a Posttrial Motion*

¶ 75 We first determine defendant forfeited his argument Bradshaw rendered ineffective assistance of counsel by failing to raise various sentencing issues in a posttrial motion. Defendant generally points to issues such as the trial court's consideration of various factors in aggravation. However, defendant merely provides brief conclusory arguments. Defendant offers no further argument on this claim of ineffective assistance of counsel and does not cite any authority to show the court erred. Such analysis is necessary because "[a]n attorney is not required to make futile motions to avoid charges of ineffective assistance of counsel." *People v. Ivy*, 313 Ill. App. 3d 1011, 1018 (2000). Thus, we find defendant has forfeited his claims concerning counsel's failure to raise sentencing issues in a posttrial motion. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (requiring a

brief to contain "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on," and providing that "[p]oints not argued are forfeited"); see also *People v. Macias*, 2015 IL App (1st) 132039, ¶ 88 (finding a defendant forfeited his ineffective assistance of counsel claim because he made a cursory argument and did "not cite any authority").

¶ 76          2. *Failure to Obtain Fingerprint Evidence or Sloan's Testimony*

¶ 77          We next determine the record is not sufficiently developed to address defendant's claims of ineffective assistance of counsel concerning Bradshaw's failure to obtain fingerprint evidence or Sloan's testimony. Claims of ineffective assistance of counsel may be raised on direct appeal where the basis for the claim can be ascertained from the record. *People v. Schaefer*, 2020 IL App (5th) 180461, ¶ 16. When the record is incomplete or inadequate for resolving an ineffective assistance claim, a collateral proceeding is preferred. *People v. Veach*, 2017 IL 120649, ¶ 46. In a collateral proceeding, both parties have "an opportunity to develop 'a factual record bearing precisely on the issue.' " *People v. Bew*, 228 Ill. 2d 122, 135 (2008) (quoting *Massaro v. United States*, 538 U.S. 500, 506 (2003)). Otherwise, a reviewing court would have to guess what defense counsel advised the defendant and counsel's strategy. *People v. Williams*, 2019 IL App (3d) 160412, ¶ 36. In those circumstances, the issue is better suited to be raised under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2024)). *Bew*, 228 Ill. 2d at 135.

¶ 78          Here, the record does not reflect what Bradshaw might have done or discussed with defendant concerning obtaining fingerprint evidence or securing Sloan's testimony. The record further does not show if fingerprint evidence would have been able to be recovered from the bag, how Sloan would testify if she were called as a witness, or if Sloan could even be located. Defendant's contention Bradshaw's defense was "weak" depends, in part, on those issues. Thus,

the record is incomplete or inadequate for resolving those claims. Instead, defendant may seek to raise them in a collateral proceeding.

¶ 79                                    3. *Revocation of the Plea Offer*

¶ 80        We also find the record is inadequate to resolve on direct appeal defendant's claim his trial counsel, particularly Bradshaw, rendered ineffective assistance by failing to timely apprise him of the overwhelming evidence against him and filing a futile motion for laboratory testing before the plea offer was revoked. Defendant argues the record shows he did not fully understand the sentencing implications and the disparity between the sentence that would have been imposed under the revoked plea and his sentence after trial shows he was prejudiced by counsel's actions.

¶ 81        "[A] criminal defendant personally possesses a constitutional right to elect what plea to enter." *People v. Williams*, 2016 IL App (4th) 140502, ¶ 33. However, regarding plea negotiations,

> " '[a] criminal defendant has the constitutional right to be *reasonably* informed with respect to the direct consequences of accepting or rejecting a plea offer.' (Emphasis in original.) This right to effective assistance of counsel extends to the decision to reject a plea offer, even if the defendant subsequently receives a fair trial." *People v. Hale*, 2013 IL 113140, ¶ 16 (quoting *People v. Curry*, 178 Ill. 2d 509, 528 (1997)).

¶ 82        Regarding prejudice in the context of a plea offer, the United States Supreme Court has held a defendant must show a reasonable probability of the following: (1) he or she would have accepted the plea offer but for counsel's deficient advice, (2) the plea would have been entered without the State canceling it, (3) the trial court would have accepted the plea bargain, and (4) "the end result of the criminal process would have been more favorable by reason of a plea to a lesser

charge or a sentence of less prison time." *Missouri v. Frye*, 566 U.S. 134, 147 (2012); see *Lafler v. Cooper*, 566 U.S. 156, 164 (2012).

¶ 83　　　　In *Hale*, our supreme court found *Frye* and *Cooper* "control and the factors set forth in those cases must now be relied upon in deciding if prejudice has been shown where a plea offer has lapsed or been rejected because of counsel's deficient performance." *Hale*, 2013 IL 113140, ¶ 20. Thus, "underlying a defendant's constitutional right to either plead guilty or not guilty is the constitutional right to be reasonably informed with respect to the direct consequences of accepting or rejecting a guilty-plea offer from the State." *Williams*, 2016 IL App (4th) 140502, ¶ 33. "The consequences of a defendant's not being so informed could be the reversal of an otherwise error-free trial when the record is silent (as is typically the case) as to what a defendant was told about rejecting or accepting a guilty-plea offer from the State." *Id.*

¶ 84　　　　Here, defendant contends his trial counsel, including Bradshaw, failed to timely provide him with discovery or information necessary to make an informed decision about the plea offer and filed a futile and unnecessary motion for laboratory testing that caused the offer to be revoked. We note the record does not strongly support defendant's claim. Bradshaw told the trial court defendant did not want to consider the plea offer without testing. Defendant had the right to make such a choice. However, the record also does not definitively show the claim lacks merit.

¶ 85　　　　While the record shows defendant was informed of the sentencing range for the full set of charges, it lacks a showing defendant was ever informed of the potential sentence he would face had he accepted the plea offer. There is nothing detailing exactly what either Kerr or Bradshaw told defendant about the sentence he was likely to receive if he had accepted the offer. When defendant was admonished about the sentencing implications of the offer at the time Kerr withdrew, the trial court and the parties discussed the sentencing range should defendant reject the

plea, but the sentencing range defendant would face if he accepted it was not specified. Instead, the court told defendant it did not know the details, but it would be "much less" than the maximum potential penalty across all of the charges. When asked if defendant understood what the court told him about sentencing, defendant expressed confusion, stating he understood "some" of what he was told, but it was "more for the trial stuff." After that, the court did not expressly determine whether defendant understood the difference between the likely sentence under the offer and without it. At the hearing on the motion to withdraw, defendant agreed Kerr "explained those penalty ranges" to him, but only the ranges applicable to a finding of guilt on the full set of charges had been discussed at the hearing. It also is unclear what, if any, effect of the discovery, aside from the test results, would have had on defendant's decision.

¶ 86 Defendant also argues the decision to seek laboratory testing was unnecessary and futile because the sample had already been field tested as positive for methamphetamine and the sample had been sent for laboratory testing months before the motion for testing was filed. While a police report in the record states the methamphetamine was field tested, the report suggests only the larger sample was tested, the officer provided a weight that did not match the laboratory tested weight, and it is unclear if Bradshaw knew that at the time he filed the motion for laboratory testing or if Bradshaw discussed that with defendant. It is unclear if any of the other sample was field tested. Defendant also notes the sample had been sent for testing months before the motion was filed and states it is unclear if it was tested at that time. Defendant points to his written letter stating that discovery materials showed a sample was less than 0.1 grams and not analyzed, which could lend to an inference the substance was at least partially tested. That conflicts with Bradshaw's representation that the sample was not tested. Facts concerning those matters are relevant to determining defendant's contention the later motion for laboratory testing was unnecessary or

futile, and thus, led defendant to allow the plea offer to be revoked based on deficient advice.

¶ 87 We also note the record shows the State reextended an offer even after the testing was requested and defendant had waived a jury trial but then revoked it again. However, the details of that offer are unknown, and it is unknown what Bradshaw told defendant about that offer or if defendant had a chance to respond to it before it was revoked. The record also lacks evidence regarding whether the trial court would have accepted the plea bargain, although it suggests that it would have done so.

¶ 88 Ultimately, the record is insufficient to definitively show defendant was properly advised regarding his decision to seek and continue to pursue testing, which caused the State to revoke the plea offers. The record also does not definitively show defendant was informed of the sentencing range he faced if he were to have accepted the plea offer. Had he not been informed or was misinformed, he arguably could show his decision to pursue laboratory testing instead of accepting the plea offer was based upon counsel's erroneous advice. Given those uncertainties and the "harsh" result as found by the trial court concerning the effect of defendant's decision to proceed to trial following a particularly favorable plea offer, we find the record is inadequate for resolving the claim on direct appeal. Defendant may seek to raise the issue in a collateral proceeding.

¶ 89                                  4. *Jury Waiver*

¶ 90 Defendant next contends Bradshaw rendered ineffective assistance by failing to ensure the validity of his jury waiver and allowing him to proceed to a bench trial without seeking to substitute the trial court judge. He argues the judge knew of inadmissible other-crimes evidence and had exhibited bias against him. He also argues Bradshaw rendered ineffective assistance by failing to raise the issue in a posttrial motion.

¶ 91    In addition to the right to the effective assistance of counsel, all defendants have a constitutional right to a jury trial (U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §§ 8, 13). Our supreme court has held a defendant's constitutional right to a jury trial "includes the right to waive a jury trial." *People v. Bannister*, 232 Ill. 2d 52, 65 (2008). Moreover, the decision to waive a jury trial belongs to the defendant alone, not his attorney. See *People v. Robinson*, 2012 IL App (4th) 101048, ¶ 33.

¶ 92    When a defendant's challenge to a jury waiver is predicated on a claim of ineffective assistance of counsel, the court must determine whether counsel's performance was deficient and whether there exists a reasonable likelihood that defendant would not have waived his right to a jury trial in the absence of the alleged error. *People v. Batrez*, 334 Ill. App. 3d 772, 782 (2002). Generally, advice on waiving a jury trial constitutes the type of trial strategy and tactics that cannot support a claim of ineffectiveness. *People v. Elliott*, 299 Ill. App. 3d 766, 774 (1998).

¶ 93    Here, the record does not support defendant's claim. While defendant contends Bradshaw allowed him to proceed to a bench trial before a biased judge who knew the facts of the Peoria County case, defendant stated he discussed the decision with Bradshaw and it was defendant's decision to pursue a bench trial. That the trial judge presided over the pretrial detention hearing and knew details about the Peoria County case was not hidden from defendant, as defendant clearly had personal knowledge of that. Then, at trial, evidence was not presented regarding the details of the Peoria County case, and nothing in the record shows the trial court relied on details about that case when it found defendant guilty. The matter of evidence concerning the Peoria County case was also addressed and rejected at the preliminary *Krankel* hearing. There is no indication in the record of any promise or suggestion by Bradshaw that the court would definitively find defendant not guilty or that Bradshaw otherwise coerced him into waiving his

right to a jury trial. See *People v. Smith*, 2024 IL App (2d) 230539, ¶ 49.

¶ 94 Defendant also suggests Bradshaw rendered ineffective assistance by failing to file a motion to substitute the trial court judge. However, nothing in the record shows such a motion would be successful.

¶ 95 Section 114-5 of the Code of Criminal Procedure of 1963 (725 ILCS 5/114-5 (West 2024)) authorizes a criminal defendant to seek substitution of a trial judge for cause on the ground the judge is so prejudiced against him that he cannot receive a fair trial. To be entitled to a substitution of a judge for cause, the party seeking substitution must "establish not merely the possibility of prejudice, but also that prejudice tangibly exists." *People v. Mercado*, 244 Ill. App. 3d 1040, 1045 (1993). "A defendant who seeks a substitution of judge for cause bears the burden of establishing actual prejudice." *People v. Klein*, 2015 IL App (3d) 130052, ¶ 85. "A defendant's right to a substitute judge is not absolute, but requires substantiation to ensure that the claim of prejudice is not frivolously made." *People v. Kluppelberg*, 257 Ill. App. 3d 516, 535 (1993). "Absent a showing of animosity, ill will, or distrust toward defendant, the judge will not be disqualified." *Id.* at 536. "The lack of impartiality of a trial judge even under extreme provocation cannot be presumed." *People v. Smeathers*, 297 Ill. App. 3d 711, 716 (1998).

¶ 96 Here, the record does not show the trial court wrongly considered evidence from the Peoria County case or exhibited animosity, ill will, or distrust toward defendant. Defendant notes the court's determination against him and findings he lacked credibility based on the Peoria County case during pretrial detention proceedings and cherry-picks comments of the court from the record in other instances to allege the court was biased. However, some of the comments defendant highlights are taken out of context, and the record does not show the court considered the Peoria County case or its previous determination to deny pretrial release when it found

defendant guilty. In a bench trial, the trial judge is presumed to know and follow the law unless the record demonstrates otherwise. *People v. Bowen*, 241 Ill. App. 3d 608, 622 (1993). That presumption is rebutted only when the record affirmatively shows the contrary. *Id.* Nothing here affirmatively shows the court was biased or wrongly considered facts from the Peoria County case at trial.

¶ 97        Defendant has failed to show Bradshaw rendered ineffective assistance in advising him to proceed to a bench trial or by failing to move to substitute the trial court judge. Accordingly, his claim of ineffective assistance of counsel regarding his jury waiver lacks merit. For the same reasons, defendant's claim that Bradshaw rendered ineffective assistance for failing to include issues concerning the validity of the jury waiver in a posttrial motion lacks merit.

¶ 98        Finally, we note defendant also argues Bradshaw rendered ineffective assistance by failing to raise his constitutional issues in a posttrial motion. Because we have found defendant's facial vagueness challenge lacks merit, Bradshaw did not render ineffective assistance. Because we have found the as-applied challenges premature, we are likewise unable to decide related matters of ineffective assistance regarding those claims on direct appeal. Defendant may seek to raise those matters in a collateral proceeding.

¶ 99                                III. CONCLUSION

¶ 100        For the reasons stated, the judgment of the trial court is affirmed.

¶ 101        Affirmed.